**In re Alarice Ann JOHNSON, Debtor.**

**Alarice Ann JOHNSON, Plaintiff,**

**v.**

**USA FUNDS, INC., Defendant.**

**Bankruptcy No. 89–03648–C.**
**Adv. No. 90–0112–C.**

United States Bankruptcy Court,
N.D. Oklahoma.

Nov. 2, 1990.

Ty H. Stites, Tulsa, Okl., for plaintiff.

Mac D. Finlayson, Tulsa, Okl., for defendant.

## MEMORANDUM OPINION

STEPHEN J. COVEY, Bankruptcy Judge.

Upon the submission of joint stipulations of fact, lists of authorities and a request for a dispositive decision · thereon, this Court will rule in favor of the Plaintiff, Alarice Ann Johnson, and discharge her student loan debt for the reasons of undue hardship as hereinafter set forth.

## STATEMENT OF FACTS

The Defendant is United Student Aid Funds, Inc., a Delaware corporation ("USAF"). The indebtedness is a guaranteed student loan which USAF purchased without recourse from Indiana National Bank. The balance of the underlying promissory note is $5,248.65, with interest at twelve percent per annum from March 11, 1988, forward.

The Plaintiff's first installment payment on the note became due less than five years before the date of the filing of the petition on November 30, 1989. Although no voluntary payments have been made on this obligation, a tax refund of $872.76 due the Plaintiff, was applied by the United States of America, Department of the Treasury, Internal Revenue Service. Approximately, 52% of the Plaintiff's total unsecured debt of $9,953.67 (Plaintiff's Schedule A–3) consists of the student loan obligation.

American Airlines employs the Plaintiff as a programmer. She has custody of her two daughters, ages 14 and 5 years respectively. Although the First Amended Schedule of Estimated Current Monthly Income and Expenses ("Budget") shows monthly income of $1,884.00, including $250.00 for child support, Schedule B–2 reflects a liquidated debt of $5,400.00 is owed to the Plaintiff from her ex-husband for back child support. The Plaintiff's take home pay after deductions, is $1,634.00, without child support. The Budget shows total estimated monthly expenses of $1,964.00, which is $80.00 more than the Plaintiff brings home. If a more realistic view is taken of the Plaintiff's income by exclusion of child support, Plaintiff is behind $330.00 each month.

The Defendant asserts the following monthly expenditures are excessive: $100.00 for clothing, $20.00 for newspapers, periodicals and books and $20.00 for religious/charitable contributions. The monthly long distance phone bill of $75.00 and the security system installment and monitoring fee of $42.00 monthly are also brought to the Court's attention. The Court notes the Plaintiff has not included in her estimation of monthly expenses any allotment for recreation or a savings for emergencies.

## ARGUMENTS AND ANALYSIS

The Plaintiff has the burden of proof to show evidence of undue hardship

sufficient to discharge the student loan debt. *Binder v. U.S. Depart. of Education (In re Binder)*, 54 B.R. 736 (Bankr. D.N.D.1985); *Shoberg v. Minn. Higher Education Coordinating Council (In re Shoberg)*, 41 B.R. 684 (Bankr.D.Minn.1984). Because no definition of "undue hardship" is set forth in the Bankruptcy Code, the definition is a question of fact which must be determined by the Court using its powers of discretion and equity. *Perkins v. Vermont Student Asst. Corp. (In re Perkins)*, 11 B.R. 160 (Bankr.D.Vt.1980); *In the Matter of Coleman*, 98 B.R. 443, 19 B.C.D. 258 (Bankr.S.D.In.1989).

"Undue hardship" means more than having a tight budget or a present inability to pay, because most debtors could make such assertions. *In re Coleman*, 98 B.R. 443, 19 B.C.D. 258, 260 (Bankr.S.D.In.1989), citations omitted. Congress included the "undue hardship" requirement in § 523(a)(8)(B) as first set forth in the draft bill proposed by the Commission on the Bankruptcy Laws of the United States. The reason for the requirement, as noted in the Commission's report, was the concern about the "rising incidents of consumer bankruptcies of former students motivated primarily to avoid payment of educational loan debts ... [A] loan ... that enables a person to earn substantially greater income over his working life should not as a matter of policy be dischargeable before he has demonstrated that for any reason he is unable to earn sufficient income to maintain himself and his dependents and to repay the educational debt." *Report of the Commission on the Bankruptcy Laws of the United States*, House Doc. No. 93–137, Part I, 93rd Cong., 1st Sess. (1973) at 140, n. 14 and 15, reprinted in *Collier on Bankruptcy*, Appendix 2 at PI-i; see also *In re Brunner*, 46 B.R. 752, 754 (S.D.N.Y.1985).

There are as many factors and tests which have been used to determine undue hardship as there are courts to decide the issue. A complete in depth analysis of undue hardship was set forth in *Pennsylvania Higher Education Assistance Agency v. Johnson, (In re Johnson)*, 5 B.C.D. 532 (Bankr.E.D.Penn.1979). The Court adopted a three prong test which (1) compared the debtor's financial resources and expenses in light of his education, skills and employment history. If the debtor passed the first prong, a good faith analysis, the second prong, determined whether the debtor had used his best efforts to maximize income and minimize expenses and whether his poor financial condition was due to uncontrollable factors. The third prong was a policy question. The Court asked whether the debtor's primary purpose for filing bankruptcy was to discharge the student loan liability and whether the education enhanced his earning capacity. If the debtor prevailed on all three prongs, the debt was discharged. Some factors which other courts have looked to were illness in the debtor's family, incapacity, good faith efforts to pay, whether the hardship in paying the loan would be long term, debtor's status according to poverty guidelines, prospects of future employment, time spans between graduation, maturation of the loan and the filed petition, excess income within the debtor's budget, reaffirmation agreements and the ratio of the student loan to the total indebtedness.

Having read the various cases addressing the issue of undue hardship and application of the various tests, this Court agrees with the decision of *In the Matter of Coleman*, 98 B.R. 443, 19 B.C.D. at 263, "[r]igid adherence by the court to a particular test robs the court of the discretion envisioned by Congress in drafting section 523(a)(8)(B). The Court finds that the more equitable approach is to view each case in the totality of circumstances involved. *Clay v. Westmar College (In re Clay)*, 12 B.R. 251, 255 (Bankr.N.D.Iowa 1981); *Johnson*, 5 B.C.D. at 536 (Court applied a "checklist" test). A case by case analysis based on such factors as those set out above, allows the court to more uniformly manage the equities of each case and view of the legislative intent in policies of the Bankruptcy Code and the government assisted/funded student loan program.

A case, therefore, succeeds or fails on its own merits and particular circumstances. Rigid application of the "undue hardship" exception would work to penalize the truly

honest and desperate debtor and clash with the notions of a fresh start and equity of distribution among the unsecured creditors.... with these policies, concepts, and notions in mind, the Court will proceed to an analysis of the facts and merits of the case at bar."

## CONCLUSION

 As noted in the Statement of Facts, the Plaintiff has custody of two minor children. The Court infers from Schedule B–2 that Plaintiff's ex-husband is either not paying child support or his payments are sporadic, at best. For a family of three, the expenditures for clothing, newspapers and a religious/charitable contribution are not excessive. Although the monthly long distance phone bill of $75.00 and a security system installment and monitoring fee of $42.00 monthly may be above average, the Court finds that neither are so high as to be excessive. The Court also notes, that the reaffirmation agreement for the security system has been rescinded. Plaintiff's reaffirmation of her car and refrigerator, indicated on her Statement of Intention, are for necessities. The Plaintiff has excluded from her budget an expense for recreation or emergency savings, both of which the Court finds are important to the Plaintiff's fresh start. Her current income, with or without the child support payment, does not allow for recreation or emergencies, the latter of which, in all probability, will occur from time to time. Although the ratio of student loan to total indebtedness is high, its weight is diminished in light of the totality of the Plaintiff's financial situation.

The Plaintiff has not been able to make voluntary payments towards satisfaction of her student loan, because her income has not even allowed her to break even in covering expenses for food, clothing and shelter. The Court will take judicial notice that a take home pay of $1,634.00 is not enough to pay off the Plaintiff's student loan and keep her and her dependents at a minimal standard of living.

The Court will enter a separate Order discharging the student loan debt.

IT IS SO ORDERED.