In re Ernest J. PENA, Jr. and Julie Pena, Debtors.

UNITED STUDENT AID FUNDS, INC., Appellant,

v.

Ernest J. PENA, Jr. and Julie Pena, Appellees.

BAP No. AZ–96–1568–HJR.
Bankruptcy No. 94–6053–PHX–CGC.
Adversary No. 94–994.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 23, 1997.

Decided April 11, 1997.

Madeleine C. Wanslee, Gust Rosenfeld P.L.C., Phoenix, AZ, for United Student Aid Funds.

Ernest J. Pena, Jr., Julie Pena, Phoenix, AZ, in pro per.

Before: HAGAN, JONES, and RUSSELL, Bankruptcy Judges.

## OPINION

HAGAN, Bankruptcy Judge:

### INTRODUCTION

The United Student Aid Funds, Inc. ("Appellant") appeals a judgment granting the

Debtors, Ernest J. Pena, Jr. and Julie Pena ("Debtors") a hardship discharge of Ernest J. Pena's student loan. The Debtors appear as Appellees. We AFFIRM.

## FACTS

The Debtors filed their voluntary petition for relief under chapter 7 of title 11, United States Code, on July 1, 1994.[1] The chapter 7 Trustee determined the case was a no asset case and the Debtors received their discharge on October 20, 1994.

The Debtors filed an adversary proceeding to determine the dischargeability of Debtor Ernest J. Pena, Jr.'s educational loans incurred while attending ITT Technical Institute. After trial a judgment was entered by the bankruptcy court holding the loans dischargeable as an undue hardship on the Debtors and their dependant under 11 U.S.C. § 523(a)(8)(B).

Ernest J. Pena, Jr. attended ITT Technical Institute from September 1987, through September 1988, and received an award of a Certificate of Associate of Specialized Technology. The educational loans he received to obtain the certificate were ultimately consolidated into a single loan bearing an annual interest rate of 10.0%.

The Debtors have one dependant, a 9 year old son. They live in a mobile home they own, located on a rental lot. Debtor Julie Pena has a medical condition that prevents her from working and for which she receives $378.00 per month in disability payments. Ernest J. Pena Jr. is currently employed and earns approximately $22,600.00 per year. He is 40 years old and is employed in the wafer fabrication room of a technical company. His current monthly take home pay is $1,370.00. The Debtors' total monthly income is $1,748.00.

The bankruptcy court found the Debtors' monthly expenses range from $1,570.00 to $1,993.00. A finding of monthly expenses of $1,789.00 was based on an average of three figures within that range. The Debtors' two older cars, a 1979 Buick and a 1976 Oldsmobile cause the Debtors additional expense due to repair problems from time to time. They have in the past lived on food stamps and in public housing.

The bankruptcy court found the Debtors have difficulty meeting their present living expenses, that there is little likelihood the Debtors' economic situation will improve, and that they have made a good faith effort to pay the student loan.

## STANDARD OF REVIEW

We review a bankruptcy court's findings of fact under the clearly erroneous standard. *Tully v. Taxel (In re Tully)*, 202 B.R. 481, 483 (9th Cir. BAP 1996); *In re Pizante*, 186 B.R. 484, 488 (9th Cir. BAP 1995), *aff'd*, 107 F.3d 878 (9th Cir.1997). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *Anderson v. Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *United States v. Yellow Cab Co.*, 338 U.S. 338, 342, 70 S.Ct. 177, 179, 94 L.Ed. 150 (1949).

We review the bankruptcy court's application of a legal standard to facts reasonably found *de novo. In re Tully*, 202 B.R. at 483 (citing *In re United States Trustee*, 32 F.3d 1370, 1372 (9th Cir.1994)).

## ISSUE

Whether the bankruptcy court erred in concluding the Debtors' student loan was dischargeable, based on a finding that the Debtors' circumstances constituted "undue hardship" under section 523(a)(8)(B).

## APPLICABLE LAW

Bankruptcy Code § 523(a) provides:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . . .

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a

---

1. Unless otherwise indicated, all references to "chapter" and "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, Bankruptcy Procedure ("Fed.R.Bank.P.") 1001–9036, which make applicable certain Federal Rules of Civil Procedure ("Fed.R.Civ.P.")

governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, *unless*—

...;

(b) *excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.*

11 U.S.C. § 523(a)(8)(B) (emphasis added).

The "undue hardship" exception has been narrowly construed:

Generally, there is no doubt that requiring repayment of the student loan would work a hardship on a debtor and the debtor's family. The fact that a debtor's budget may be tight for the foreseeable future is the norm rather than the exception. *United States v. Collier,* 8 B.R. 909, 911 (Bankr.S.D.Ohio 1981). However, the question is whether requiring repayment would work an *undue* hardship.

*In re Bakkum,* 139 B.R. 680, 682 (Bankr. N.D.Ohio 1992) (emphasis in the original); *see also In re Norman,* 25 B.R. 545 (Bankr. S.D.Cal.1982).

The Code, the legislative history of the exception, and the case law provide no clear definition of "undue hardship." Certain tests have developed to support a determination of whether an individual debtor's circumstances satisfy the undue hardship requirement. These tests usually require a court to consider: (1) whether it is reasonable, considering the debtor's current and future income and expenses, to require the debtor to repay some or all of the loan; (2) whether the debtor has made a good faith effort to repay the loan; and (3) whether allowing the discharge of the loan would thwart the legislative intent in passing section 523(a)(8). *In re Bakkum,* 139 B.R. at 683.[2]

Other decisions note:

[R]igid adherence by the court to a particular test robs the court of the discretion envisioned by Congress in drafting section 523(a)(8)(B). The Court finds that the more equitable approach is to view each case in the totality of circumstances involved.

*In re Johnson,* 121 B.R. 91, 93 (Bankr. N.D.Okl.1990), (quoting *Clay v. Westmar College (In re Clay),* 12 B.R. 251, 255 (Bankr. N.D.Iowa 1981)); *see also In re D'Ettore,* 106 B.R. 715, 718 (Bankr.M.D.Fla.1989); *In re Andrews,* 661 F.2d 702, 704 (8th Cir.1981).

In determining whether the Debtors were experiencing "undue hardship" the bankruptcy court referred to the standards used by the Sixth Circuit Court of Appeals in *Cheesman v. Tennessee Student Assistance Corporation (In re Cheesman),* 25 F.3d 356, 359 (6th Cir.1994), *cert. denied,* 513 U.S. 1081, 115 S.Ct. 731, 130 L.Ed.2d 634 (1995):

(1) Whether the debtors are capable of paying the loan while maintaining a minimal standard of living; (2) Whether the debtor's financial circumstances are likely to persist for a significant portion of the repayment period; (3) The debtor has made a good faith effort to repay the loan.

*Findings of Fact, Conclusions of Law, and Ruling,* dated May 22, 1996, pg. 5.

### APPELLANT'S CONTENTIONS

The Appellant contends the bankruptcy court erred in the following particulars in reaching his decision:

1. The evidence showed that the Debtors' income exceeded their expenses and thus Debtors are incapable of paying the student loan while maintaining a minimal standard of living.

2. The Debtors failed to demonstrate additional or extraordinary circumstances that would lead to the conclusion their financial

---

**2.** Compare the Second Circuit's approach which fashions two separate tests out of the first requirement and does not consider the Congressional intent test. According to the Second Circuit method, the debtor must show:

(1) that the debtor cannot maintain, based upon current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the payment period of the student loans; and (3) that the debtor has made a good faith effort to repay the loans. *Brunner v. New York State Higher Education Services Corp. (In re Brunner),* 831 F.2d 395, 396 (2nd Cir.1987), *aff'g* 46 B.R. 752 (S.D.N.Y.1985).

difficulties would persist for a significant portion of the loan pay off period.

3. The evidence does not satisfy the "good faith" requirement that the Debtors have made an attempt to pay the loan.

4. The court erred in considering the value of the Debtor Ernest J. Pena's education in making the determination of undue hardship.

## DISCUSSION

### I.

Appellant argues the evidence shows the Debtors' monthly expenses were $1,570.00, had the bankruptcy court correctly applied the "mechanical test" of subtracting the monthly expenses from monthly income. Appellant contends that according to the interrogatories answered by the Debtors, their net monthly income was $1,748.47, thus leaving available $178.00 for payment on the student loan.

█ The bankruptcy court found the Debtors' expenses exceeded their income and thus there was no money available under the Debtors' present circumstances to make payments on the educational loans. The bankruptcy court used an average figure in determining the Debtors' monthly expenses. The averaging was supported by the facts, and the bankruptcy court's use of this technique, based on evidence, although conflicting, was not clearly erroneous.

### II.

The Appellant contends the Debtors did not demonstrate additional or extraordinary circumstances that would lead the court to conclude their financial difficulties would persist for a significant portion of the loan pay off period. The criteria urged by the Appellant is taken from the Second Circuit Court of Appeals decision, *In re Brunner*, 831 F.2d at 396.

The bankruptcy court did not require the Debtors to demonstrate that additional or extraordinary circumstances existed that would lead to the conclusion their financial difficulties would persist for a significant portion of the loan pay off period. Instead, the bankruptcy court found the Debtors' present financial circumstances would not improve sufficiently to allow them to pay the loan, pursuant to criteria listed under *Cheesman*.

█ The *Cheesman* standard used by the bankruptcy court is the better test. The Debtors' prospects for future economic gain are capable of determination by taking into consideration their present marketable skills, the extent of their education, the prospect of acquisition of further education or skill training at their age and in their present status. The Debtors should not be required to prove that "exceptional circumstances" exist precluding an improved financial status in the future.

### III.

█ In its findings of fact and conclusions of law, the bankruptcy court found the Debtors had paid $135.00 per month for seven months on the student loan before Debtor Ernest J. Pena, Jr. lost his job. The Debtors were given a 90 day deferment from payments by the Appellant or the Appellant's assignor of the claim. At the end of this period, the Debtors' monthly payments were raised to $175.00 and the Debtors filed their chapter 7 petition shortly thereafter. These facts are sufficient to support the finding that the Debtors made a good faith effort to repay the student loan.

### IV.

Appellant further contends the bankruptcy court erred in taking into consideration the value of Debtor Ernest J. Pena, Jr.'s education at ITT.

The bankruptcy court, in written findings of fact and conclusions of law, made comments to the effect that the value of the education received by the Debtor Ernest J. Pena, Jr., and for which the loans were made, was "meaningless" and of no use to him in that it failed to supply skills that would enable him to increase his economic standing. The Appellant contends that taking into consideration the value of the education for which the student loan is granted is erroneous.

■ The Appellant argues that under the District Court decision in *In re Brunner*, 46 B.R. 752 (S.D.N.Y.1985), such findings constitute reversible error.

> In connection with the showing of good faith and circumstances beyond the control of the debtor several courts have permitted debtors to discharge their loans upon a showing that the education for which the loans paid has been of little use to them. Consideration of this factor is not only improper, it is antithetical to the spirit of the guaranteed loan program.

*Id.* at 755 n. 3 (citations omitted). The comments by the bankruptcy court about the value of the education were part of the findings regarding the Debtor's ability to earn future income. The bankruptcy judge noted that the Debtor's education had not materially helped him improve his employment and that this situation would continue in the future.

## CONCLUSION

The bankruptcy court correctly found the Debtors' income and expense status did not allow them to pay the loan and still maintain a minimal standard of living, that their financial circumstances are likely to persist for a significant portion of the repayment period, and that they have made a good faith effort to pay the loan. The decision of the bankruptcy court is AFFIRMED.