**In re Adryann Maxine STRAUSS, Debtor.**

**Adryann Maxine STRAUSS, Plaintiff,**

v.

**STUDENT LOAN OFFICE–MERCER UNIVERSITY, et al., Defendants.**

**Bankruptcy No. 92–4072 TP.
Adversary No. 96–4739 AT.**

United States Bankruptcy Court,
N.D. California.

Jan. 12, 1998.

Anthony Fritz, Law Offices of Fritz and Myers, San Francisco, CA, for Plaintiff/Debtor.

Miriam E. Hiser, Law Offices of Marron, Reid and Sheehy, San Francisco, CA, for Defendant/Creditor.

## MEMORANDUM OF DECISION

LESLIE J. TCHAIKOVSKY, Bankruptcy Judge.

Plaintiff (the "debtor") is a chapter 13 debtor who has completed her plan payments and received a discharge. The debtor's debts consisted solely of student loan claims which, with two statutory exceptions, are not dischargeable in a chapter 13 case. The debtor seeks a discharge of the remaining balance of her claims pursuant to one of those exceptions—i.e., on the ground that payment of those remaining claims would constitute an "undue hardship." 11 U.S.C.A. §§ 523(a)(8)(B); 1328(a)(2) (West 1993 & Supp.1997). For the reasons below, the Court finds in favor of the debtor and discharges the claims.

### SUMMARY OF FACTS

The debtor received a bachelor's degree in English in 1983 and graduated from law school in 1987. She then moved to California, took the bar exam, and obtained employment pending receipt of her bar exam results. Unfortunately, she did not pass the exam and was terminated from her position on that basis. At the same time, she experienced a traumatic but unrelated personal experience. For personal reasons, the debtor moved to New York where she found employment as a legal assistant. She attempted to take the New York bar examination but was still too emotionally upset to complete it.

In 1990, the debtor returned to California, found another job as a legal assistant, and contacted her student loan creditors to work out repayment arrangements. After making payments on this basis for approximately one year, in late 1991, one of the creditors to whom she had been making payments filed suit against her. She hired an attorney and attempted to obtain a dismissal of the action. This attempt was unsuccessful. In February 1992, she filed this chapter 13 case.

The debtor's Schedule F in her bankruptcy case file indicates that, at the time this chapter 13 case was filed, the debtor owed approximately $51,000 in student loan obligations.[1] Schedule I indicates that, at that time, she earned $1,908 per month after taxes and other deductions. Schedule J lists her expenses as $1,105.01 per month. Based on these figures, the debtor proposed to pay $800 per month for five years equaling 84 percent of her student loan claims.[2]

In 1993, the debtor lost her job and was unemployed for several months. She obtained a three month suspension of payments from the Court. However, when the suspension period was over, she was required to increase her payments to $840 per month for the duration of the plan. She was able to find new employment at approximately the same income level and, by exercising extreme frugality, managed to complete her plan payments.

According to the Final Account filed by the chapter 13 trustee, the debtor completed her payments under the plan in October 1997. She made a total of $46,735.68 payments under the plan, of which $43,117.90 went to pay her student loan creditors. The

---

1. The debtor names four defendants in the complaint—Student Loan Office–Mercer University ("Mercer"), Higher Education Assistance Foundation ("Higher"), U.S. Department of Education ("U.S."), and New York Higher State Education ("New York"). New York entered into a stipulation with the debtor that the remaining debt could be discharged, and a judgment pursuant to that stipulation has already been entered. U.S. answered the complaint and stated that it did not oppose discharge of its remaining debt. Mercer's attorney was served with a copy of the trial scheduling order and informed the debtor's counsel prior to trial that Mercer did not intend to defend the action. Consequently, judgment may be granted in favor of the debtor with respect to these two defendants by default. The only entity that took an active role in the trial was Educational Credit Management Corporation ("ECMC"), a nonprofit student loan guaranty agency, to whom the debtor's remaining loans had been assigned. The parties stipulated at trial that ECMC was the real party in interest with respect to those loans.

2. Based on her testimony at trial, the debtor appears to have believed that she would receive a discharge of her student loan debt when her plan was completed. Student loan debt was dischargeable in chapter 13 cases until some time in 1990. Her case was filed in early 1992. The debtor's attorney may not have been aware of the change in the law when he advised her, or the debtor may merely have misunderstood.

balance went primarily to pay the trustee's fees and expenses and court costs. The debtor received a $9.05 refund. The debtor received a discharge pursuant to 11 U.S.C. § 1328 on October 25, 1997. However, the discharge specifically excepts student loans as specified in 11 U.S.C. § 523(a)(8) in a bankruptcy case filed on or after November 1, 1990. At present, the debtor's loan obligation to ECMC, as of October 27, 1997, was $10,033.78.[3]

Since completing the plan, the debtor has moved to Massachusetts to be closer to her parents, who are aging and have health problems. She was able to find a job there as a legal assistant at a salary slightly less than she received in California. The debtor did not provide evidence of her current net income, only of her gross. However, since her gross income was less than she previously earned, the Court concludes that the debtor's current net income is something less than $1,900 per month—i.e., the amount she previously received.

The debtor did provide some information regarding her current expenses. She testified that she currently pays rent of $850 per month. However, some of the items included in her list of expenses were clearly not necessities—e.g., Internet access. Others were substantial nonrecurring items—e.g., the purchase of a new car and new clothes for work. The debtor testified that she had she had deferred these expenses as long as she could while performing her plan but could defer them no longer. These evidentiary deficiencies make it difficult for the Court to calculate the debtor's disposable income as it would if this were a new chapter 13 case.

### APPLICABLE LAW

Section 1328(a)(2) of the Bankruptcy Code provides, in pertinent part, that:

As soon as practicable after completion by the debtor of all payments under the plan, . . . court shall grant the debtor a discharge of all debts provided for by the plan . . . , except any—

. . .

(2) of the kind specified in paragraph . . . (8) . . . of section 523(a) . . . of this title . . . .

11 U.S.C.A. § 1328(a)(2). Section 523(a)(8)(B) of the Bankruptcy Code provides as follows:

A discharge . . . does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

. . .

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C.A. § 523(a)(8)(B).

The leading case in this circuit on the "undue hardship" discharge of student loan obligations pursuant to 11 U.S.C. § 523(a)(8) is *In re Pena*, 207 B.R. 919, 923 (9th Cir. BAP 1997). In *Pena*, the Bankruptcy Appellate Panel affirmed a bankruptcy court's discharge of a chapter 7 debtor's student loans. In doing so, the Panel noted that neither the Bankruptcy Code nor legislative history provides a definition of "undue hardship." The Panel noted that the bankruptcy court had applied the following three pronged test established in *In re Cheesman*, 25 F.3d 356, 359 (6th Cir.1994), *cert. denied*, 513 U.S. 1081, 115 S.Ct. 731, 130 L.Ed.2d 634 (1995):

(1) Whether the debtors are capable of paying the loan while maintaining a minimal standard of living; (2) Whether the debtor's financial circumstances are likely

---

**3.** Although the debtor failed to address ECMC's right to interest accruing during the chapter 13 plan in her trial brief, at trial, her counsel contended that ECMC's claim should not include such interest. He cited no authority in support of that contention. ECMC did address the issue in its trial brief. It contended that interest continues to accrue on a nondischargeable claim during a chapter 13 case, citing in support of this contention *Leeper v. Pennsylvania Higher Educ. Assistance Agency*, 49 F.3d 98, 105 (3d Cir.1995). This appears to be the prevailing rule, and the Court is persuaded that it is the correct one.

to persist for a significant portion of the repayment period; (3) The debtor has made a good faith effort to repay the loan. *Pena*, 207 B.R. at 921.

The Panel noted that a slightly different test had been espoused by another circuit court case—*Brunner v. New York State Higher Educ. Services Corp.*, 831 F.2d 395, 396 (2d Cir.1987). This test requires that the debtor provide proof of "additional or exceptional circumstances" that would cause the debtor's financial situation to persist. *Pena*, 207 B.R. at 922. The Panel expressed a preference for the *Cheesman* test as compared to the *Brunner* test but rejected the lender's contention that the lower court had applied the *Brunner* test. The Panel also noted that some courts had rejected the "[r]igid adherence...to a particular test...[as opposed to viewing] each case in the totality of the circumstances involved." *Id.* at 921, quoting *In re Johnson*, 121 B.R. 91, 93 (Bankr.N.D.Okla.1990), in turn quoting *In re Clay*, 12 B.R. 251, 255 (Bankr.N.D.Iowa 1981).

## DISCUSSION

ECMC concedes that the debtor can easily satisfy the third prong of the three prong test cited in *Cheesman:* i.e., that the debtor has made a good faith effort to pay her student loan obligation. ECMC does not concede that the debtor has met the second prong—i.e., the likelihood that the debtor's financial condition will persist indefinitely. The debtor does have a law degree and in theory could take and pass a bar exam at some time in the future. If she passed the exam, presumably, her earning ability would increase substantially.

However, the debtor testified at trial that, after ten years, she felt that it was too late to attempt to pass the bar exam and practice law. The Court believed that her testimony was sincere. Moreover, the Court agrees that, even if she attempted to take the bar exam now, after such a long delay, her chances of passing it would not be good.

The principal difficulty presented by the *Cheesman* test, from the debtor's point of view, is her inability to satisfy the first prong: i.e., the debtor's ability to make pay-ments and still maintain a minimal standard of living. ECMC contends that each prong must be established separately; the fact that the evidence on one factor—i.e., good faith—is extremely strong does not assist the debtor with proof of the other two factors. ECMC supports this contention with relevant authority.

ECMC contends that the debtor's ability to repay the remaining debt at her current salary is best evidenced by her ability to complete the chapter 13 plan. Moreover, ECMC contends that there is simply no precedent for finding that student loan obligations owed a single debtor, with no dependents, in good health and with income of this amount may be discharged on an "undue hardship" basis. The debtor's counsel responds that the debtor's plan required the debtor to live at a substandard level and that she should not be required to continue to live at this level any longer.

The flaw in the debtor's logic is her assumption that she would be required to continue to pay $800 per month. The Court agrees that, given her salary, a monthly payment of this amount would not permit the debtor to maintain a minimal standard of living. However, the Court is persuaded that the debtor could pay, for example, $200 per month without falling below that standard. At $200 per month, it would take the debtor approximately five more years to pay off the remaining balance of her student loans with the interest that would continue to accrue. The question presented is whether this would constitute an "undue hardship" under these circumstances. The Court concludes that it would.

Most of the cases discussing the "undue hardship" discharge of student loans are chapter 7 cases. *Cheesman, Brunner,* and *Pena* were all cases in which chapter 7 debtors were attempting to discharge their student loan debt without making any further payment. However, the debtor cited one chapter 13 case involving the discharge of a student loan on an "undue hardship" basis, and the Court has located five more. In three of the cases, the bankruptcy courts discharged the debtor's student loan debts as

presenting an "undue hardship." *In re Goranson*, 183 B.R. 52 (Bankr.N.D.N.Y.1995); *In re Elebrashy*, 189 B.R. 922 (Bankr. N.D.Ohio 1995); *In re Derby*, 199 B.R. 328 (Bankr.W.D.Pa.1996). In two cases, the court did not. *In re Claxton*, 140 B.R. 565 (Bankr.N.D.Okla.1992); *In re LaFlamme*, 188 B.R. 867 (Bankr.D.N.H.1995). In one case, the bankruptcy court discharged part of the student loan debt. *In re Rivers*, 213 B.R. 616 (Bankr.S.D.Ga.1997).

For the most part, these courts use a three part test similar to that established in *Brunner* and *Cheesman* in conducting their analyses. However, none of the cases have facts similar to those presented here. In four of the cases, the debtors' chapter 13 plans had paid their student loan creditors only nominal amounts.[4] A fifth case—*Derby*, 199 B.R. 328—does not indicate the percentage of unsecured claims paid through the plan. In the sixth case—*LaFlamme*, 188 B.R. at 871—the loan had not yet come due. The cases cannot be fairly compared to one in which the debtor has repaid 84 percent of her claims over a five year period at great personal sacrifice.

As noted above, some courts have rejected the rigid formula established in both *Cheesman* and *Brunner* in favor of a "totality of the circumstances" test. In *Pena*, the Bankruptcy Appellate Panel does not appear to foreclose the use of this test in appropriate circumstances. The Court believes that this test should be applied here and that, under that test, ECMC's debt should be discharged on "undue hardship" grounds.

The Court believes that failing to discharge ECMC's claims under these circumstances would be contrary to the policies of the Bankruptcy Code as clearly expressed in two distinct statutes. As noted above, 11 U.S.C. § 523(a)(8)(A) provides that a student loan will be discharged in a chapter 7 case if the loan first became due more than seven years before the petition was filed. More than seven years have passed since ECMC's student loan claims first became due. If the debtor had not been forced to file a chapter 13 case by one recalcitrant creditor and had simply continued to make payments outside of bankruptcy, she could now file a chapter 7 case and discharge the remainder of her student loan debt pursuant to that Code section.[5]

Moreover, if the Court were to deny the debtor's claim in this adversary proceeding, the debtor could simply file a chapter 7 petition, commence a new adversary proceeding, and discharge ECMC's debt in that case. In this new case, ECMC's debt will qualify for the discharge for student loan debts that first came due more than seven years before the petition was filed. Normally, a debtor may not receive a chapter 7 discharge until six years after receiving a chapter 13 discharge. However, there is an exception to this rule when the debtor has completed a chapter 13 plan paying at least 70 percent of her debt and the plan was filed in good faith and represented the debtor's best effort. 11 U.S.C.A. § 727(a)(9)(B)(West 1993). There is no doubt that the debtor could qualify for this exception. No purpose would be served in requiring the debtor to file another bankruptcy case.

## CONCLUSION

The Court concludes that, under these circumstances, applying the three pronged *Cheesman* test to determine whether failing to discharge a student loan debt would constitute an "undue hardship" would work a substantial injustice and be contrary to the policies of the Bankruptcy Code. Instead, a "totality of the circumstances" test should be

---

4. In *Claxton,* the plan paid unsecured creditors only three percent of their claims. 140 B.R. at 566. In *Goranson,* the plan paid only five percent. 183 B.R. at 54. In *Rivers,* the plan provided a "nominal dividend." 213 B.R. at 617. In *Elebrashy,* the percentage was not specified but the student loan debt was $80,000 at the beginning of the plan and only reduced to $77,000 at the end. 189 B.R. at 924, 928.

5. Although ECMC might contend that the repayment period was "suspended" under 11 U.S.C. § 523(a)(8)(A) during the pendency of the debtor's chapter 13 case, the Court would find this contention without merit. The debtor's payments under the plan certainly equaled any payments her student loan creditors could have obtained through their own collection efforts under nonbankruptcy law if a bankruptcy case had not been filed.

applied. Under this test, for the reasons discussed above, the remaining balance on ECMC's claim should be discharged. The Court directs counsel for the debtor to submit a proposed form of judgment in accordance with this decision.