# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

―――――

No. 98-6095NE

―――――

In re:                                              *
                                                    *
Donna Mae Andresen,                                 *
                                                    *
    Debtor.                      *
                                                    *
Donna Mae Andresen,                                 *
                                                    *
    Appellee,                     *       Appeal from the United States
                                                    *       Bankruptcy Court for the
    v.                            *       District of Nebraska
                                                    *
Nebraska Student Loan Program, Inc.,                *
                                                    *
    Appellant.                    *

―――――

Submitted: March 3, 1999
Filed:  March 30, 1999

―――――

Before KRESSEL, SCHERMER, and DREHER, Bankruptcy Judges.

―――――

KRESSEL, Bankruptcy Judge.

    The Nebraska Student Loan Program, Inc., appeals from the September 2, 1998, and October 16, 1998, orders of the bankruptcy court[1] holding that two of the debtor's student

―――――――――――――――

[1]The Honorable John C. Minahan, Jr., United States Bankruptcy Judge for the District of Nebraska.

loans were discharged in her Chapter 7 case under the undue hardship provision of § 523(a)(8) of the Bankruptcy Code.

We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. Johnson v. Border State Bank (In re Johnson), ___ B.R. ___, 1999 WL 89958 (8th Cir. BAP Feb. 24, 1999); Eilbert v. Pelican (In re Eilbert), 162 F.3d 523, 525 (8th Cir. 1998). A determination of undue hardship is a factual determination, and is reversible only if we find clear error.[2]

Because we conclude that the bankruptcy court correctly interpreted § 523(a)(8) as applying to each student loan individually and not to an aggregate obligation of cumulative student loan debt, and because the bankruptcy court's determination that the debtor would experience undue hardship if two of her student loans were excepted from discharge is not clearly erroneous, we affirm.

## BACKGROUND

The debtor, Donna Mae Andresen, obtained three student loans,[3] one each year in 1986, 1987, and 1988, while attending school to become a licensed practical nurse. The loans were each guaranteed by NSLP, which is still the holder of the three loans. The loans are not consolidated.

---

[2] But see Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman), 25 F.3d 356, 359 (6th Cir. 1994) (determination that excepting student loans from discharge will impose undue hardship is a question of law subject to de novo review; factual findings underlying the determination are reviewed for clear error). We do not agree with this narrow distinction. While defining undue hardship is a question of law, we think that the determination of whether excepting a student loan from discharge will result in undue hardship for the debtor and the debtor's dependents is a question of fact.

[3] The original dates and principal balances of the loans are:
        March 31, 1986      -   $2,500.00
        February 10, 1987   -   $2,625.00
        April 7, 1988       -   $1,177.00

2

Andresen filed her Chapter 7 bankruptcy petition on January 7, 1991. In 1993, sustained a severe back injury with a disability rating of 43% for workers' compensation

commenced a nationwide job search. Eventually she found an employer willing to

On May 1, 1996, Andresen filed this adversary proceeding seeking determination of dischargeability of her three student loans pursuant to the undue hardship provisions of §

the court entered an order finding that Andresen had satisfied the requirements of § 523(a)(8) a hardship discharge of two of her three student loans, and found that she could pay the third loan without undue hardship.

NSLP contends that the bankruptcy court erred when it found that excepting student loans from discharge would impose undue hardship on her and her dependents,

Andresen's student loan debt. For the reasons set forth below, we affirm the judgment of the

DISCUSSION

Partial Discharge

A discharge under section 727 ... of this title does not discharge an debtor from any debt — for an educational benefit overpayment or loan program funded in whole or in part by a governmental unit or nonprofit or for any obligation to repay funds received as an educational benefit,

under this paragraph will impose an undue hardship on the debtor and the

---

[4] The debtor does not appeal this part of the court's judgment.

<u>See</u> 11 U.S.C. § 523(a)(8).[5]

Across jurisdictions there is wide disparity among treatments of student loans under § 523(a)(8). For the past two decades, a split has developed regarding whether a court may partially discharge a debtor's student loan or whether the courts are restricted to all-or-nothing dischargeability.

The courts practicing revision of student loans, granting partial discharges, and fashioning other case-specific equitable relief have found authority to do so implicit in § 523(a)(8) due to its policy objectives, and alternatively in the discretionary equitable powers reserved to the bankruptcy court by § 105(a). <u>See</u> Thad Collins, Note, *Forging Middle Ground: Revision of Student Loan Debts in Bankruptcy as an Impetus to Amend 11 U.S.C. S 523(A)(8)*, 75 Iowa L. Rev. 733, 757-61 (1990).

Critics of the partial discharge theories, however, note the "well-accepted principle that if Congress is able to specify something in the statute but does not, then its silence controls." <u>Id</u>. at 758, citing <u>NLRB v. Bildisco</u>, 465 U.S. 513, 522-23 (1984). Accordingly, if Congress had intended revision or partial discharge to be options for the court to consider under § 523(a)(8), then Congress could have expressly enumerated those options or included broader language in order to reveal that policy objective and enable the bankruptcy courts to effectuate it.[6]

---

[5] The noted version of the statute became effective October 7, 1998. The earlier version contained a provision controlling the dischargeability of student loans the due date of which arose *more* than seven years prior to filing the bankruptcy petition. That provision was repealed and undue hardship is now the only basis for discharge of student loans. However, the prior version of the statute would not produce a different result in this case. Andresen filed her Chapter 7 petition less than seven years after her student loans first became due.

[6] <u>See</u>, e.g., 11 U.S.C. § 523(a)(5) (includes the language "but not to the extent that..." in order to qualify the exceptions to the nondischargeability of debts to the debtor's children, spouse or former spouses, and other matrimonial related debts. Such language presumably vests the bankruptcy court with the latitude and duty to find which parts of a debt under this section are discharged and not, as opposed to limiting the

The legislative history clearly identifies the policies behind the exception to discharge for student loans. Congress excepted student loans from discharge in order to close what it deemed a loophole in the student loan program. Id. at 734; see also Johnson v. Missouri Baptist College (In re Johnson), 218 B.R. 449, 451-54 (8th Cir. BAP 1998). This so-called loophole permitted graduates to escape their student loan obligations by filing bankruptcy on the eve of a lucrative career. Id. The exception to discharge was created to "rescu[e] the student loan program from insolvency, and [to] prevent[] abuse of the bankruptcy process by undeserving student debtors." See Raymond L. Woodcock, *Burden of Proof, Undue Hardship, and Other Arguments for the Student Debtor Under 11 U.S.C. § 523(A)(8)(B)*, J.C. & U.L. 377, 381-84 (1998).

Nevertheless, as clear as the legislative history is, it suffers a lack of scope. While it identifies the legislative purpose of excepting student loans from discharge, the legislative history offers little to define the nature of the exception (undue hardship) to the exception (nondischargeability). That Congress wanted to save the student loan programs and bar the undeserving student borrower from abusing the bankruptcy process does not directly identify how Congress intended the discharge to be granted in cases of undue hardship.[7] The

---

outcome of the determination to all-or-nothing. Section 523(a)(7) also includes "to the extent" language to preclude the all-or-nothing discharge and presumably require the court to make specific findings as to the extent to which the debt is nondischargeable.

[7] In this regard, it is worth noting the significance of § 523(a)(8) prior to its most recent amendment: the original section allowed student loans to be discharged without demonstrating undue hardship as long as a period of 5 years (subsequently amended to 7 years and most recently completely eliminated) following the first due date of the loans had expired. That the original statute contemplated a point at which a debtor could discharge student loans completely and without a showing a undue hardship may explain the apparent all-or-nothing approach to the undue hardship discharge exception. Congress simply wasn't contemplating any situation in which a loan would require revision by a bankruptcy court because either a loan would be fully dischargeable before the five (or seven) years on the basis of undue hardship, or it would be fully dischargeable in any event upon expiration of the applicable number of years. Under the original statute, therefore, a debtor would be unlikely to seek relief in bankruptcy prior to the expiration of the applicable number of years since repayment on a student loan became due, unless the debtor's undue hardship made it imperative.

5

legislative purposes do not illustrate the legislative position on the propriety of partial discharge and other revisions of student loans in undue hardship cases under § 523(a)(8).

Nevertheless, some courts have found that revising student loans, partially discharging them, or deferring payments by maintaining or extending the automatic stay, are proper applications of the undue hardship exception to the nondischargeability of student loans because such manipulation upholds the policies behind nondischargeability generally and attributes significance to the fresh start policy at the same time.[8]  These courts find that partial discharge of student loans protects the solvency of the student loan programs and deters undeserving debtors while protecting the honest but unfortunate debtor better than the all-or-nothing approach which can lead to harsh results, either for the creditor or the debtor depending on the whether the outcome is all or nothing.  See, e.g., Georgia Higher Educ. Assistance Found. v. Bowen (In re Bowen), 37 B.R. 171, 173 (Bankr. M.D. Fla. 1984) (acknowledges that the literal language of the statute does not create the leeway to exercise equitable powers, but concludes that it is nevertheless appropriate and within the policy of the statute to hold the debt nondischargeable but restructure repayment because the either/or results are unnecessarily harsh).

Other courts granting partial discharge and other partial relief under § 523(a)(8) rely on the equitable powers of § 105(a), which provides, in relevant part, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title...shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate...to prevent an abuse of process."  See, e.g., Connor v. Illinois State Scholarship Commission (In re Connor), 89 B.R. 744, 750 (Bankr. N.D. Ill. 1988) (Section 105(a) cited as authority without elaboration).

---

[8]  But see Craig A. Gargotta, Column, Affairs of State, *Congress Amends § 523(A)(8) to Elimibate Seven-Year Discharge Provisions for Student Loans*, 17-NOV Am. Bankr. Inst. J. 8 (1998) (Congress now views undue hardship not as a debtor protection, but rather as a creditor protection, and consequently fresh start is no longer the issue, but whether the non-payment of the student loans violates public policy).

However, § 105(a) has been found by some courts to be restricted to exercising equitable powers only within the enumerations of the Code.  See Johnson v. First Nat'l Bank of Montevideo, 719 F.2d 270, 273 (8th Cir. 1983) (bankruptcy court erred when it stayed a state statutory period of redemption pursuant to § 105(a); bankruptcy court's broad equitable powers may only be exercised in a manner which is consistent with the provisions of the Code).  Indeed, the Supreme Court has also said as much.  See Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988) (whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code).

Accordingly, the question arises whether § 105(a) provides authority for a bankruptcy court to grant an undue hardship discharge under § 523(a)(8) in any manner less than full discharge when the language of § 523(a)(8) does not itself include any particular limiting or broadening language.  On its face, the statute asks only whether or not excepting the loan at issue from discharge will impose undue hardship upon the debtor or the debtor's dependents. The telling word in the section is unless, which therefore casts the determination as:  *if* excepting the student loan from discharge will impose undue hardship, *then* the debt is discharged.

In spite of the unstable foundation upon which rests the authority, if any, to revise student loans or partially discharge student loan debt, courts continue to do so on the basis of implicit statutory policy or § 105(a) discretion because the literal interpretation and its sometimes harsh results seem at odds with the legislative intentions for § 523(a)(8) and with the purposes of the Code overall.[9]  These courts, at least, have apparently deemed fairness

_____

[9] Interestingly, there are so many cases in which bankruptcy courts have granted partial discharge under § 523(a)(8) that some commentators and even some courts in cases addressing the exception to discharge for nonsupport divorce debts under § 523(a)(15) have recognized a partial discharge theory operating in § 523(a)(8) and applied it to § 523(a)(15) by analogy.  See Stephen Joseph, *How Courts Have Interpreted the Phrases "Ability to Pay" and "Outweighs the Detrimental Consequences" Under 11 U.S.C. § 523(a)(15)(A) and (B) of the Bankruptcy Code in Cases Involving Non-Dischargeable Divorce Obligations-Part I*, 103 Com. L. J. 67, 78 (1998); Richard H.W. Maloy, *Using Bankruptcy Court to Modify Domestic Relations Decrees: Problems Created by § 523(A)(15)*, 31 Fam. L. Q. 433, 453 (1997); Comisky v. Comisky (In re Comisky), 183 B.R. 883, 884 (Bankr. N.D. Cal. 1995); but see McGinnis v. McGinnis (In

principles a concern supreme to arbitrary or unpredictable results and consistent with, or within the confines of, express provisions of the Code. See Collins at 761 (whether or not revision or partial discharge of student loans pursuant to § 523(a)(8) constitutes intolerable judicial lawmaking depends on whether the practice furthers or corrupts the legislative intent).

For example, in Tennessee Student Assistance Corp. v Hornsby (In re Hornsby), 144 F.3d 433, 439-40 (6th Cir. 1998), the Sixth Circuit Court of Appeals recently held that the bankruptcy court should not have discharged the debtors' entire student loans because, pursuant to § 105(a), "[i]n a student-loan discharge case where undue hardship does not exist, but where facts and circumstances require intervention in the financial burden on the debtor, an all-or-nothing treatment thwarts the purpose of the Bankruptcy Act." The court concluded that bankruptcy courts have the equitable power to: (1) partially discharge student loans, either by discharging an arbitrary amount of the principal, interest accrued, or attorney fees; (2) institute a repayment schedule (presumably modifying the repayment terms of the loan); (3) defer repayment; (4) acknowledge that the debtor may re-open the proceedings to revisit the question of a hardship discharge; or (5) fashion any appropriate remedy. Id. at 440. The court noted that "[i]mplicit in this practice of revising student loan debts is the notion that a rigid, all-or-nothing interpretation does not sufficiently or effectively address the array of facts and circumstances that appear before the courts." Id. at 439, n.9, citing Collins at 736.

A number of courts finding partial discharge and other modifications of student loans appropriate rely on Heckathorn v. United States Dept. of Educ. (In re Heckathorn), 199 B.R. 188, 194-95 (Bankr. N.D. Okla. 1996), which stayed accrual of interest for three years and stayed collection of the debtor's student loans for five years. See, e.g., Rivers v. United Student Aid Funds, Inc. (In re Rivers), 213 B.R. 616, 618-19 (Bankr. S.D. Ga. 1997); Jones

---

re McGinnis), 194 B.R. 917, 921 (Bankr. N.D. Ala. 1996) (acknowledges the analogy between § 523(a)(8) and (a)(15) but appears to rely exclusively on legislative history and statutory interpretation of (a)(15), regardless of the noted analogy to (a)(8), to hold that the court has discretion to modify the debt as opposed to being restricted to an all-or-nothing determination of dischargeability.

v. Catholic University of America (In re Jones), 1997 WL 52188 (Bankr. D. D.C. 1997). The bankruptcy court in Heckathorn reasoned that because the bankruptcy discharge is an injunction, the provisions "which effectively shape the injunction, [such as the exceptions to discharge under § 523,] should be read as an expression of the equitable nature, function, and (it necessarily follows) behavior of the injunctive remedy." Heckathorn, 199 B.R. at 194.

Construing the exceptions to discharge "in light of equity" requires the bankruptcy court to recognize that the relief that Congress afforded the debtor under § 523(a)(8) centers around undue hardship, which is necessarily a "matter of degree." Id. at 195. "Financial hardship is not all-or-nothing, but is more or less." Id. The Heckathorn court further relied on the premise that partial discharge or other revision of student loan debt accomplishes both legislative policy objectives, fresh start and maximum repayment of student loans, instead of "[i]nsisting on complete discharge or complete repayment [and] unnecessarily sacrific[ing] one policy to the other." Id. Finally, the Heckathorn court relied on the general canon of statutory interpretation that a court should not interpret a statute plainly if so doing would lead to an absurd result, "meaning a result which furthers no purpose, i.e. is arbitrary or fortuitous." Id.

The theory of partial discharge and its progeny of assorted other equitable responses by courts facing debtors for whom a whole discharge seems overly generous (usually due to the debtor's potential for increased future earnings) appears to have begun with the bankruptcy court's opinion in Littell v. State of Oregon Bd. of Higher Educ. (In re Littell), 6 B.R. 85, 89 (Bankr. D. Or. 1980). The court in Littell offered no authority for its position, but merely held that "[i]nstead of the all-or-nothing approach [prevailing in nearly every case to date], the courts should consider whether only part of the debt should be nondischargeable and what monthly payment the debtor could afford." Id. The court ordered a partial discharge of the debtor's loans by first reducing the payments and then, interestingly, calculating the number of payments to be made so that payments would terminate at the end of the five year nondischargeable period. Id.

Since the Littell opinion in 1980, the number of courts granting partial discharges and other equitable relief under § 523(a)(8) has increased considerably. See, e.g., Wetzel v. New

9

York Higher Educ. Services Corp. (In re Wetzel), 213 B.R. 220, 226-27 (Bankr. N.D. N.Y. 1996) (bankruptcy court has discretion to consider the extent to which student loans are nondischargeable); Oderkirk v. Northwest Educ. Loan Ass'n., Fin. Assistance, Inc. (In re Oderkirk), 1995 WL 241338 (Bankr. D. Idaho 1995) (bankruptcy courts have the equitable power to either restructure or partially discharge student loans); Dennehy v. Sallie Mae (In re Dennehy), 201 B.R. 1008, 1012-13 (Bankr. N.D. Fla. 1996) (debtor's student loans nondischargeable, but collection and accrual of interest deferred for two years); Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman), 25 F.3d 356, 360-61 (6th Cir. 1994) (debtor's student loans nondischargeable, but court's order stayed for 18 months); Roberson v. Illinois Student Assistance Comm'n. (In re Roberson), 999 F.2d 1132, 1138 (7th Cir. 1993) (affirmed bankruptcy court's order deferring student loans for two years, without comment on the source of authority); Woyame v. Career Educ. & Management (In re Woyame), 161 B.R. 198, 203 (Bankr. N.D. Ohio 1993) (partial discharge of student loans); Griffin v. Eduserv (In re Griffin), 197 B.R. 144, 147 (Bankr. E.D. Okla. 1996) (bankruptcy court has the authority to modify the repayment terms and/or the amount owed) (citations omitted); Silliman v. Nebraska Higher Educ. Loan Program (In re Silliman), 144 B.R. 748, 752 (Bankr. N.D. Ohio 1992) (partial discharge of student loan debt); Bakkum v. Great Lakes Higher Educ. Corp. (In re Bakkum), 139 B.R. 680, 683-84 (Bankr. N.D. Ohio 1992) (bankruptcy court has the discretion to excuse any portion of the debtor's student loan obligation which would create an undue hardship).

Contrariwise, other courts have found that there is absolutely no authority for the bankruptcy court to do anything but make the undue hardship determination and accordingly find the student loan at issue either discharged or excepted from discharge. In Hawkins v. Buena Vista College (In re Hawkins), 187 B.R. 294, 300-01 (Bankr. N.D. Iowa 1995), the bankruptcy court held that it did not have the power to rewrite loan repayment terms. "The court's authority under § 523 is to determine dischargeability. This is an all-or-nothing proposition." Id. at 300. The court noted that the Littell opinion, upon which many subsequent opinions have expressly relied, justified its decision on equitable grounds but offered no analysis of the lack of express authority in § 523 to do other than decide dischargeability. Id. at 300-01.

10

In construing § 523(a)(8) and concluding that it does not authorize the courts to fashion partial discharges, the Hawkins court noted that "Congress has not given bankruptcy courts the authority to rewrite student loans," and that "Congress could have provided that student loans will be dischargeable 'to the extent' excepting such debt will impose undue hardship upon a debtor and her dependents," especially in light of the fact that "Congress used that phrase numerous times elsewhere in the Bankruptcy Code, including three other subdivisions of the dischargeability statute, 11 U.S.C. §§ 523(a)(2), 523(a)(5), and 523(a)(7)." Id. at 301. The court noted the well-known canon of statutory construction that "Congress' failure to include language is presumed intentional where it has used the language elsewhere in the same statute." Id.; citing Bildisco, 465 U.S. at 522-23. Regarding the court's statutory equitable powers, the Hawkins court stated that "the bankruptcy court's power under § 105 is not a limitless authorization to do whatever seems equitable," and noted the rule that "[t]he court may not use § 105 to effect a result in conflict with other sections of the Bankruptcy Code." Hawkins, 187 B.R. at 301, citing United States v. Energy Resources Co., Inc., 495 U.S. 545, 549-50 (1990).

In Skaggs v. Great Lakes Higher Educ. Corp. (In re Skaggs), 196 B.R. 865, 866-67 (Bankr. W.D. Okla. 1996), the court held that its "authority to determine dischargeability of student loans is limited *strictly* to a determination of whether a discharge of the entire debt is required." Id. at 867 (emphasis added). The Skaggs court relied on the well-known canon of statutory interpretation that "[a] court must confine the scope of its inquiry to the language of a particular statute unless it is ambiguous on its face." Id. at 866, citing United States v. Ron Pair Enter., Inc. 489 U.S. 235, 241 (1989). The court concluded § 523(a)(8)(B) is clear and unambiguous, and determined that its literal application is not "demonstrably at odds" with the legislative scheme. Skaggs, 196 B.R. at 866, citing Griffin v. Oceanic Contractors, 458 U.S. 564, 571 (1982).

Finally, the court in Skaggs explained that § 523(a)(8) is so clearly unambiguous on its face that the limit on the court's power "to act only on the entire student loan" is self-evident: "'Debt' is defined in section 101(12) of the Bankruptcy Code as 'liability on a claim.' Plainly understood, 'liability on a claim' encompasses the entire liability, not merely some portion of the debt or merely selected terms of repayment. Congress might have used

11

language to authorize the discharge of partial liability or the modifications of conditions of liability but did not." Skaggs, 196 B.R. at 866.

Interestingly, few opinions, including Skaggs which included consideration of the statutory definition of debt and analysis of the meaning of liability on a claim, address the premise that a debtor's liability on a claim for repayment of a student loan made, or of another educational debt or obligation (or overpayment), as provided by § 523(a)(8), speaks to one or to each loan. Many of the cases on both sides of the issue completely overlook the apparently express wording of the statute which mandates an undue hardship evaluation for each individual educational loan obligation. The cases deal with the debt in aggregate, perhaps misled merely because multiple loans are often held by one lender, servicer or guarantor which may subtly manage to blend multiple liabilities on actually different claims into one single debt.

Other courts have distinguished among a single debtor's multiple loans but nevertheless held that the all-or-nothing rule requires the hardship discharge to operate on either all or none of the debtors loans. In Young v. PHEAA (In re Young), 225 B.R. 312, 317-18 (Bankr. E.D. Pa. 1998), the bankruptcy court held that declaring some of the debtor's eight loans dischargeable but leaving nondischargeable those the court deemed her able to pay would constitute "an exercise of § 105(a) powers in contradistinction to the language of § 523(a)(8)(B)." Id. at 318. The court suggested that the only permissible way to accomplish a partial discharge in this manner would be for the lender to voluntarily withdraw its objections to the discharge of certain loans.

In Brown v. SallieMae Serv. Corp. (In re Brown), 227 B.R. 540, 547-48 (Bankr. S.D. Cal. 1998), the debtor had several different loans, owing to at least two different lenders, for which he was seeking an undue hardship discharge. The court deemed the case "a classic situation in which [it] should order that a portion of the student loans be repaid by Plaintiffs [because a] partial discharge approach is the best means of protecting the interests of all involved." Id. at 547. The court indicated that it would have preferred to require the debtor to devote all of his disposable income to repayment of the loans for five years thereby "provid[ing] some return to the lenders yet reliev[ing] Plaintiffs of what would otherwise be a life-long financial burden." Id.

However, the court deferred to the Ninth Circuit BAP's holding that the plain language of § 523(a)(8) precluded partial discharge of a student loan, and accordingly discharged all of the debtor's student loans. See United Student Aid Funds, Inc. v. Taylor (In re Taylor), 223 B.R. 747, 753 (9th Cir. BAP 1998). Unfortunately, the Brown court did not read § 523(a)(8) plainly enough to distinguish a requirement that an individual undue hardship determination for each of the debtor's student loans could warrant the conclusion that some but not all of a debtor's student loans were properly discharged. It could certainly have done so and still followed the all-or-nothing rule as set forth by the BAP in Taylor.

In Taylor, the Ninth Circuit BAP did indeed hold that the plain language of § 523(a)(8) does not authorize a partial discharge of student loans. Taylor, 223 B.R. at 753. The BAP agreed with the reasoning and the statutory construction applied by the courts in the Skaggs and Hawkins opinions, and disagreed with the courts that have deemed the statute ambiguous and/or applied the equitable powers of § 105(a) in order to find partial discharges and fashion other revisions of student loans. Id. at 752-54.

However, the BAP in Taylor did *not* hold that individual treatment of each of a debtor's student loans under § 523(a)(8) constituted partial discharge. The BAP did not define partial discharge with that much particularity. The BAP simply did not address whether the statute's undue hardship exception, to the otherwise general exception to discharge of student loans, is to be applied all-or-nothing as to the debtor's "debt for an educational... overpayment or loan," as opposed to a debtor's summed debts or aggregate debt for educational overpayments or loans. 11 U.S.C. § 523(a)(8).

The debtor in Taylor originally borrowed educational funds from different lenders, and some of the loans were later consolidated. Taylor at 749. Accordingly, the BAP in Taylor also overlooked the significance, if any, of the effect of consolidation on some or all of a debtor's student loans. The court did not answer whether or not, for purposes of applying the all-or-nothing undue hardship rule, consolidation transforms a debtor's original several loans into a single loan. Its treatment of the debtor's student loans nevertheless, was comprehensive in that the all of all-or-nothing included all of the debtor's student loans, consolidated and not, as opposed to all (dollars) of each loan.

13

The Eighth Circuit Court of Appeals has not specifically decided the issue of partial dischargeability. However, in Pagnac v. Minnesota Dep't. of Revenue (In re Pagnac), 228 B.R. 219, 223 (8th Cir. BAP 1998), we found the argument that the debtor's tax obligation "be partially discharged based on some hardship theory" unavailing because courts that have permitted partial discharge of certain debts "exist only in the context of sections 523(a)(8) and 523(a)(15), governing discharge of student loans and divorce obligations, where hardship exists as a statutorily created issue[,]" whereas "[s]ection 507(a)(8), governing priority of certain taxes, has no hardship provision." Id. While we acknowledged the application of a theory of partial discharge by some courts under §§ 523(a)(8) and (a)(15), we did not, in Pagnac, endorse the theory.

The cases finding partial discharges and crafting a myriad of equitable relief varieties illustrate the unpredictability and lack of uniformity of outcomes resulting from courts not following an all-or-nothing rule. While the courts endorsing theories of a broad grant of discretion or an implicit prevailing policy objective rely on principles of fairness and lack of better way to properly address the multitude of factors unique to each student loan bankruptcy case, the pervasive lack of certainty and the diversity of results may in fact produce an entirely different set of *in*equities. It seems reasonably possible that Congress in fact wrote § 523(a)(8) as plainly as it did because the all-or-nothing approach actually strikes a superior equilibrium by sorting student loan cases along a bright-line and containing judicial discretion within the confines of defining and determining undue hardship, rather than vesting the bankruptcy court with the authority, much less the duty, to interfere as much as the judicial tinkering demonstrated by the cases practicing partial discharge and other revision of student loans.

In this case, we hold that the bankruptcy court did not grant Andresen a "partial discharge" of her student loan debt, at least not in the sense contemplated by NSLP or contained by the term of art definition of partial discharge as it has developed over the last twenty years. The language of § 523(a)(8) expressly refers to a student loan, an overpayment, or any obligation. The words provided in the section are clearly singular. The

14

Code does not refer to a debtor's sum of student loans, aggregate student loan debt, or other accumulated, consecutive, or consolidated loan obligations.[10]

The bankruptcy court found that Andresen's Chapter 7 discharge operated on two of her three individual student loans by reason of the undue hardship provision of § 523(a)(8). The court found that one of her student loans was excepted from the discharge because paying that loan would not cause undue hardship to her or her dependents.[11]  This is not a case where a court found that the discharge operated to relieve part of a single loan, or part of a sum of consolidated loans, by some pro rata, percentage or other truly partial measure.

We hold that the bankruptcy court's application of § 523(a)(8) to each of Andresen's educational loans separately was not only allowed, it was required.

---

[10]  At least one other court appreciates this distinction.  See Hinkle v. Wheaton College (In re Hinkle), 200 B.R. 690, 693 (Bankr. W.D. Wash. 1996) (bankruptcy court cannot restructure loans, but there is no reason that it cannot treat each one separately for the purpose of dischargeability).  The Hinkle court stated that it found the language of § 523(a)(8) sparse but unambiguous, especially in light of Congress glaring omission of "to the extent" wording, and it rejected § 105 powers as authority to restructure student loans or grant partial discharges.  Id.  The court also limited its holding to loans that have not been consolidated.  Id.

[11]  But see Raimondo v. New York State Higher Educ. Serv. Corp. (In re Raimondo), 183 B.R. 677, 679-81 (Bankr. W.D. N.Y. 1995).  The court in Raimondo expressly noted that § 523(a)(8) "requires that the Court consider the dischargeability of each loan as a separate obligation," and [n]othing in its text expressly authorizes the division of a single claim ... into dischargeable and nondischargeable parts."  Id. at 680. Nevertheless, the court found that "[n]o statute dictates a disparity of result as among educational lenders.  Rather equity demands an identical treatment for these similarly situated creditors."  Id.  The court held that § 523(a)(8) "permits the discharge, on a pro rata basis, of only that portion" of the debt that exceeds what the debtor could pay without hardship.  Id. at 681.  We respectfully disagree with the Raimondo court. Creditor protection is accomplished by the exception to discharge; the exception to the exception operating in circumstances of undue hardship is a debtor protection.  The loan-by-loan all-or-nothing application of hardship discharge effects the level of debtor-creditor equilibrium that Congress intended when it drafted the unambiguous § 523(a)(8).

To determine whether § 523(a)(8) permits partial discharge is to determine whether the statute permits a single student loan to be divided into discharged and excepted portions due to the undue hardship that would otherwise be imposed upon the debtor and her dependents if the whole single obligation were excepted. While it appears plain to us that there is no authority in the Code or elsewhere for partial discharge or other revision of a debtor's individual educational loan obligations, that question is not before us and we therefore decline to decide it.

Undue Hardship

Undue hardship is not defined in the Bankruptcy Code. The legislative history demonstrates that Congress was concerned about abusive student debtors and protecting the solvency student loan programs, but the history does not shed light on exactly what Congress meant by the use of the term undue hardship. See Veryl Victoria Miles, *Fairness, Responsibility, and Efficiency in the Bankruptcy Discharge: Are the Commission's Recommendations Enough?* 102 Dick. L. Rev. 795, 824-830 (1998).

Primary arguments over enactment of § 523(a)(8) addressed the lack of empirical evidence of student debtors in fact constituting a threat to the continued viability of student loan programs and whether the exception to discharge was actually a collection device for lenders not being aggressive enough with collection efforts. Id. Appreciation for the fact that undue hardship would accordingly be "subject to disparate multi-factor approaches" has occurred only with the benefit of hindsight. Id. at 828, citing *Bankruptcy: The Next Twenty Years*, National Bankruptcy Review Commission, Final Report, ch. 5 at 52 (Oct. 20, 1997) (dissent).

Indeed, a number of tests for undue hardship have been developed over the last two decades, each trying to accurately reflect and enforce the policies Congress intended by enacting the exception to the exception, and yet each containing significant differences. See Robert F. Salvin, *Student Loans, Bankruptcy, and the Fresh Start Policy: Must Debtors be Impoverished to Discharge Educational Loans?* 71 Tul. L. Rev. 139, 170 (1996) (Undue hardship is an empty vessel, susceptible to being filled with whatever policy objectives courts deem appropriate).

## The Brunner Test

In its determination, the bankruptcy court relied on the test set forth by the Second Circuit Court of Appeals in Brunner v. New York State Higher Educ. Serv. Corp. (In re Brunner), 831 F.2d 395, 396 (2nd Cir. 1987). The court found that Andresen satisfied all three elements of the Brunner undue hardship test: (1) she could not maintain, based on current income and expenses, a minimal standard of living for herself and her dependents if forced to repay the loans; (2) her current state of affairs was likely to persist for a significant portion of the repayment period of the student loans; and (3) she had made a good faith effort to repay the loans. Id.

Many bankruptcy courts, including several in the Eighth Circuit, have followed the Brunner test. See, e.g., United States Dep't of Educ. v. Rose (In re Rose), 227 B.R. 518, 524 n.7 (Bankr. W.D. Mo. 1998) (citations omitted); Hawkins v. Buena Vista College (In re Hawkins), 187 B.R. 294, 297-298 (Bankr. N.D. Iowa 1995); Zlotopolski v. Dressel (In re Dressel), 212 B.R. 611, 615-616 (Bankr. E.D. Mo. 1997).

## The Johnson Test

The Brunner test is a popular variation of what appears to be the first § 523(a)(8) undue hardship test, articulated years earlier by the bankruptcy court for the Eastern District of Pennsylvania, in Johnson v. Pennsylvania Higher Educ. Assistance Agency (In re Johnson), 5 B.C.D. 532 (Bankr. E.D. Pa. 1979). The Johnson test considers: 1) a mechanical analysis of the debtor's past and probable future financial resources; 2) the debtor's good faith, including the debtor's best efforts to repay the loan and minimize expenses; and 3) a policy analysis of the debtor's motives in filing, including whether the debtor derived financial benefits from the education received by virtue of the loans. Id. If the bankruptcy court finds against the debtor on any of the three tests, the inquiry ends and the student loan is not dischargeable. Id. Some courts have adopted or modified the Johnson test as preferable to Brunner. See, e.g., Cossette v. Higher Educ. Assistance Found. (In re Cossette), 41 B.R. 689,691 (Bankr. D. Minn. 1984);  North Dakota State Bd. of Higher Educ. v. Frech (In re Frech), 62 B.R. 235, 240-41 (Bankr. D. Minn. 1986).

## The Bryant-Poverty Test

On the other hand, some courts have declined to follow <u>Johnson</u> or <u>Brunner</u>. In 1987, the bankruptcy court in <u>Bryant v. Pennsylvania Higher Educ. Assistance Agency (In re Bryant)</u>, 72 B.R. 913, 916-17 (Bankr. E.D. Pa. 1987) noted its dissatisfaction with the "unbridled subjectivity" at work in the good faith analysis element of undue hardship cases. <u>Id</u>. at 915. The <u>Bryant</u> court therefore introduced the poverty test under which a debtor's student loans were presumptively nondischargeable if the debtor's income exceeded the Federal poverty guidelines, unless the debtor could prove extraordinary circumstances meriting discharge in spite of a lack of poverty. <u>Id</u>. at 916-19.

*Miscellaneous Variations*

Other courts have added other levels of precision to certain factors of different tests, perhaps clarifying an ambiguity within the test a jurisdiction applies but adding to the confusion overall. For example, in 1993, the Seventh Circuit Court of Appeals held that the <u>Brunner</u> analysis of future income potential requires certain and not temporary hopelessness in order for a discharge to operate of a debtor's student loans. <u>See</u> <u>In re Roberson</u>, 999 F.2d 1132, 1135 (7th Cir. 1993). The court also added that the <u>Brunner</u> good faith inquiry requires applying the rule that if the debtor's inability to repay his student loans is due to his own negligence or irresponsibility in conducting his financial affairs, then discharge must be denied. <u>Id</u>. at 1136.

In 1995, the Third Circuit defined undue hardship as unconscionable hardship. <u>See</u> <u>PHEAA v. Faish (In re Faish)</u>, 72 F.3d 298, 303-05 (3d Cir. 1995). In <u>Jones v. Catholic University of America (In re Jones)</u>, 1997 WL 52188, 1 n.2 (Bankr. D. Dist. Col. 1997), the court stated that it disagreed "with the Brunner test to the extent that it looks to the 'repayment period of the loan' to determine whether the debtor's undue hardship situation is likely to persist." The court noted that § 523(a)(8) "speaks to the 'debt' and not to the repayment period of the loan itself," and that "[t]he real issue is whether the debt should be discharged because there is no hope for the debtor to repay it in the future." <u>Id</u>.

*The Cheesman and Pena Tests*

In 1997, the Ninth Circuit Bankruptcy Appellate Panel rejected <u>Brunner</u> in favor of the test enunciated by the Sixth Circuit in <u>Cheesman v. TSAC (In re Cheesman)</u>, 25 F.3d 356, 359 (6th Cir. 1994). <u>See</u> <u>United Student Aid Funds, Inc. v. Pena (In re Pena)</u>, 207 B.R. 919, 922 (9th Cir. BAP 1997). It seems to us that the court in <u>Cheesman</u> applied the <u>Brunner</u> test, but the Ninth Circuit BAP found a distinction arising from wording in <u>Brunner</u>, absent from <u>Cheesman</u>, that "*additional* circumstances exist indicating that this state of [the debtor's financial] affairs is likely to persist for a significant portion of the payment period of the student loans." <u>Pena</u>, 207 B.R. at 922, citing <u>Brunner</u>, 831 F.2d at 396 (emphasis added). "[R]igid adherence by the court to a particular test robs the court of the discretion envisioned by Congress in drafting § 523(a)(8)(B). The Court finds that the more equitable approach is to view each case in the totality of the circumstances involved." <u>Pena</u>, 207 B.R. at 922. (citations omitted).

The <u>Pena</u> court also rejected <u>Brunner</u> based on its good faith test limitation, as enunciated by the district court in that case, precluding the debtor from offering evidence that the education for which the loans paid was of little or no use or benefit to the debtor. <u>Id</u>. at 923, citing <u>Brunner</u>, 46 B.R. 752, 755 n.3 (S.D.N.Y. 1985). Instead, the BAP in <u>Pena</u> held that the test for undue hardship was flexible enough to properly consider the value of a debtor's education to the extent that doing so was part of determining the debtor's future earning ability. <u>Pena</u>, 207 B.R. at 923 (the debtor's education had not materially helped him improve his employment and his current financial situation was likely to continue).

*The Rule in the Eighth Circuit: Andrews*

The Eighth Circuit Court of Appeals has not expressly adopted or rejected the <u>Brunner</u> or any other test for undue hardship. However, we think the Eighth Circuit expressed its preference for a totality of the circumstances test a long time ago in <u>Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)</u>, 661 F.2d 702, 704 (8th Cir. 1981). Although <u>Andrews</u> was decided two years after <u>Johnson</u>, the Court did not mention the <u>Johnson</u> test. Instead, the Court relied on recommendations to Congress by The Commission on the Bankruptcy Laws of the United States when § 523(a)(8) was enacted,[12]

---

[12] The Eighth Circuit relied on the Commission's recommendation that student loans "should not as a matter of policy be dischargeable before (the debtor) has

19

and the opinions of the bankruptcy courts in In re Wegfehrt, 10 B.R. 826, 830 (Bankr. N. D. Ohio 1981) (each student loan undue hardship case must be examined on the facts and circumstances surrounding the particular bankruptcy, and the court must determine whether there would be anything left from the debtor's estimated future income to enable the debtor to make some payment on his/her student loan without reducing what the debtor and his/her dependents need to maintain a minimal standard of living. In re Bagley, 4 B.R. 248, 250-51 (Bankr. D. Ariz. 1980). See Andrews, 661 F.2d at 704.

The Eighth Circuit's opinion in Andrews resulted in a test for undue hardship under § 523(a)(8) that requires an analysis of (1) the debtor's past, present, and reasonably reliable future financial resources; (2) calculation of the debtor's and his dependents' reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding that particular bankruptcy case. Id. The Eighth Circuit's Andrews case, while not a finely detailed test as those pronounced in Brunner or Frech, is the authority in this circuit on the matter of undue hardship discharge under § 523(a)(8).

Moreover, the Andrews test is less restrictive and less narrow, yet it maintains the essential core considerations. For example, the Frech test asks whether and to what extent the debtor received benefit from his or her education financed by the loans sought to be discharged. We think that, absent unique circumstances, this inquiry would *ordinarily* be irrelevant. On the other hand, it may speak to a debtor's future earning capacity. The Brunner test extends the issue of the debtor's ability to repay to the term of repayment of the loan. We think this limitation may not be appropriate in every case.

---

demonstrated that *for any reason* he (or she) is unable to earn sufficient income to maintain himself (or herself) and his (or her) dependents and to repay the educational debt." Andrews, 661 F.2d at 704 (emphasis added). The Court also stated that, "[i]n order to determine whether the nondischargeability of the student loan would impose an 'undue hardship' on the debtor, the Commission stated that: ... the rate and amount of (the debtor's) future resources should be estimated reasonably in terms of ability to obtain, retain, and continue employment and the rate of pay that can be expected...The total amount of income, its reliability, and the periodicity of its receipt should be adequate to maintain the debtor and (the debtor's) dependents, at a minimal standard of living within their management capability, as well as to pay the educational debt." Id.

*Totality of the Circumstances*

There are many courts applying a totality of the circumstances test for undue hardship under § 523(a)(8).[13]  For example, in <u>Law v. The Educ. Resource Inst., Inc. (In re Law)</u>, 159 B.R. 287, 292-293 (Bankr. D. S.D. 1993), the bankruptcy court for the district of South Dakota rejected the <u>Brunner</u> test opting instead for a "case-by-case" and "fact-sensitive" approach that considers a debtor's good faith, financial resources, and necessary expenses as well as any other circumstances.  The court explained that a totality test "affords a determination that contextually considers both the debtor's situation and the policies underlying § 523(a)(8)" and better "ensures an appropriate, equitable balance [between] concern for cases involving extreme abuse and concern for the overall fresh start policy."

In <u>Strauss v. Student Loan Office - Mercer University (In re Strauss)</u>, 216 B.R. 638, 641 (Bankr. N.D.Cal. 1998), the bankruptcy court rejected the <u>Brunner</u> and <u>Cheesman</u> tests. The court found that the Ninth Circuit BAP in <u>Pena</u> had recognized the potential pitfalls of an overly narrow test and endorsed the application of a totality of the circumstances test when the particular situation of a given case contained issues that would not be properly addressed by consideration under one of the more rigid approaches.  <u>Id</u>. at 642.  "[U]nder these circumstances [before the court in <u>Strauss</u>], applying the three pronged Cheesman test ... would work a substantial injustice and be contrary to the policies of the Bankruptcy Code. Instead, a 'totality of the circumstances' test should be applied."  <u>Id</u>.

Finally, the bankruptcy court in <u>Rose v. United States Dep't of Educ (In re Rose)</u>, 227 B.R. 518, 524 (Bankr. W.D. Mo. 1998), recently noted the Eighth Circuit's controlling opinion in <u>Andrews</u> and characterized "the test as questioning whether the debtor's future resources would sufficiently provide for a 'minimal standard of living' and still leave something to pay the educational debt."  <u>Rose</u>, 227 B.R. at 524.  "The Eighth Circuit

---

[13]  <u>See, e.g.</u>, <u>Moorman v. Kentucky Higher Educ. Assistance Auth. (In re Moorman)</u> 44 B.R. 135, 137-38 (Bankr. W.D. Ky. 1984); <u>D'Ettore v. Devry Inst. of Tech. (In re D'Ettore)</u>, 106 B.R. 715, 718 (Bankr. M.D. Fla. 1989); <u>Coleman v. Higher Educ. Assistance Found. (In re Coleman)</u>, 98 B.R. 443, 451 (Bankr. S.D. Ind. 1989); <u>Ford v. Tennessee Student Assistance Corp. (In re Ford)</u>, 151 B.R. 135, 138-40 (Bankr. M.D. Tenn. 1993); <u>Evans v. Higher Educ. Assistance Found. (In re Evans)</u>, 131 B.R. 372, 375-76 (Bankr. S.D. Ohio 1991);.

ultimately approved an inquiry that considered the debtor's present employment and financial situation (including assets, expenses and earnings) along with the prospect for future changes (either positively or negatively) in the debtor's financial position." Id.

The test for undue hardship binding bankruptcy courts in the Eighth Circuit is that held by the Court of Appeals in Andrews. We interpret Andrews to require a totality of the circumstances inquiry with special attention to the debtor's current and future financial resources, the debtor's necessary reasonable living expenses for the debtor and the debtor's dependents, and any other circumstances unique to the particular bankruptcy case.

A careful review of the record in this case reveals that the bankruptcy court, although it explicitly applied the Brunner test, did not err when it found that excepting two of Andresen's student loans from discharge would impose undue hardship on Andresen and her dependents. The Brunner test and the Andrews test are similar, with the controlling Andrews test simply allowing a broader consideration of the case and any factors specific to a given debtor's particular situation. We find that the bankruptcy court's finding of undue hardship is supported by the evidence under either test.

We reject NSLP's contention that Andresen did not prove that her financial situation is unlikely to improve in the future. The bankruptcy court specifically found that due to her disability, Andresen's income will not likely increase "at any time in the future." Moreover, the bankruptcy court noted that although Andresen's son would soon reach the age of majority and no longer be her legal responsibility, the child support she receives for his care will also be eliminated at that time.

Finally, although NSLP argues that Andresen will have extra income in three years when her second mortgage is paid off, the bankruptcy court noted that Andresen's minor daughter has medical problems the treatment of which results in extraordinary expenses from time to time. This may indicate that although Andresen's legal responsibility for that child will terminate before the second mortgage is satisfied, she may nevertheless be required to continue caring for the child, or face accrued medical bills, and without the benefit of the child support she currently receives for that child.

22

The bankruptcy court made a careful analysis of the debtor's situation. Without second guessing the bankruptcy court, we cannot find that its factual findings are clearly erroneous. Based on those findings, we agree that excepting the loans from discharge would impose undue hardship on Andresen and her dependents.

## CONCLUSION

Because the bankruptcy court did not allow a partial discharge of a student loan, we need not address the issue of the permissibility under the Code of partial discharges of student loans under § 523(a)(8).

The court's factual findings are not clearly erroneous but are supported by the record and indicate that, under the <u>Andrews</u> totality of the circumstances test for undue hardship, Andresen and her dependents would suffer undue hardship if two of her student loans were excepted from discharge. Accordingly, we affirm the judgment of the bankruptcy court.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE
PANEL, EIGHTH CIRCUIT.

23