In re Don Bradley SCHOLL, Jr., Debtor.

Don Bradley Scholl, Jr. Plaintiff,

v.

NSLP (Nebraska Student Loan Program), Defendant.

Bankruptcy No. 98–03531–C.
Adversary No. 9–9190–C.

United States Bankruptcy Court, N.D. Iowa.

Jan. 31, 2001.

Michael Mollman, Cedar Rapids, IA, for Debtor/Plaintiff.

Thomas Peffer, Cedar Rapids, IA, for Defendant.

## ORDER RE APPLICATION TO DETERMINE DISCHARGEABILITY

PAUL J. KILBURG, Chief Judge.

On November 9, 2000, the above-captioned matter came on for trial pursuant to assignment. Plaintiff Don Bradley Scholl, Jr. appeared in person with his attorney, Michael Mollman. Defendant Nebraska Student Loan Program appeared by Attorney Thomas Peffer. Evidence was presented after which the Court took the matter under advisement. On January 5, 2001, hearing was held on Plaintiff's Application to Reopen the Record for Additional Findings of Fact. The parties were ordered to file a stipulation of supplemental facts with additional briefs. The time for filing briefs has now passed and the matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

### STATEMENT OF FACTS

Debtor Don Bradley Scholl, Jr. entered into a program for Hotel–Motel–Restaurant Management at Clifton School of Business (North American College) in Phoenix, Arizona, in 1987 when he was approximately 24 years old. However, he quickly concluded he had made a poor decision with regard to his choice of schools. Debtor claims the college misrepresented its accredited status. He discovered that credits from the courses in which he was enrolled would not transfer to other schools. Less than two months into his first semester, Debtor confronted school officials about the problem and they responded by informing him that it would probably be in his best interest to withdraw. The Clifton School of Business informed him that the student loan money would be returned since he had completed less than one-third term. Following his discussion with school officials, Debtor promptly withdrew. However, the tuition was never refunded to the lender.

In 1988, Debtor was contacted by Plaintiff Nebraska Student Loan Program (NSLP), a lending institution who had purchased his outstanding student loan. The original lender is not revealed in the record nor is the original loan amount. However, Debtor and NSLP reached an agreement to consolidate his student loans and a payment plan was devised. It is not clear from the record but it seems as though someone may have made payments on his behalf from 1988 to 1989. The record is clear that Debtor has not made any payments on his own behalf towards satisfying this student loan debt.

Debtor is now 38 years old. Other than his short stint at North American College, he has no post-high school education. From 1993 until 1995, Debtor worked full-time at Hardees in Cedar Rapids for $6.50 per hour. In 1995, he left the fast food service industry to work at Hy–Vee Food Stores. At Hy–Vee, he was made an assistant manager in Hy–Vee's Kitchen where his work mainly involved catering. Because this was a salaried position, the store required him to work 50 hours per week. He grossed $940 every two weeks.

According to Debtor, his health has deteriorated in recent years. He has had frequent migraines for the past ten years and is currently taking four or five medications to treat them. Debtor contracted genital herpes which forces him to take medication five times a day. Several times a month the virus will flare-up which causes a breakdown in his immune system. Because of these frequent flare-ups, Debtor becomes weak and ill resulting in missed work and lost wages. In addition, Debtor began to experience a numbing sensation in his lower thighs. He made several trips to the hospital and eventually discovered that he has a bulging vertebrae in his lower back.

Debtor testified that in addition to physical illness, he also has psychological problems. Debtor has recurring bouts of depression and anxiety. On several occasions, these caused him to have emotional outbursts at work. He has been seeing a psychiatrist who has prescribed medications which add about $350 to Debtors monthly expenditures. Despite the fact that Debtor's medical insurance covers 80% of the costs, the accumulated medical bills have recently increased to the extent that he is now worse off than he was prepetition.

Most, if not all, of these conditions and symptoms are supported only by Debtor's testimony with little, if any, expert testimony. Nor did Debtor present any evidence about his long term prognosis.

Debtor asserts that his present situation continues to deteriorate. In the fall he was demoted from his management position to a grocery bagger at Hy–Vee because of missed work and illness. Debtor voluntarily quit his job at Hy–Vee in December and now is looking for other work. Debtor does not currently receive aid from any state or federal agency. He has no dependents and is not married but he faces a growing student loan debt of $14,600 and car loan payments of $385 per month for a 1997 Jeep which are part of estimated monthly costs of $1,204.

### CONCLUSIONS OF LAW

■ Ordinarily, student loan obligations are not discharged in bankruptcy. 11 U.S.C. § 523(a)(8). However, Congress has provided an exception in cases where the debt would "impose an undue hardship on the debtor or the debtor's dependents." *Id.* Debtor has the burden of proof on the issue of dischargeability under § 523(a)(8). *In re Roberson,* 999 F.2d 1132, 1137 (7th Cir.1993).

The Bankruptcy Code does not define "undue hardship". 11 U.S.C. § 101. In the past, this Court has applied the three-part *Brunner* test. *In re Hawkins,* 187 B.R. 294, 298 (Bankr.N.D.Iowa 1995); *In re Zulaica,* Adv. No. 95–2176KD, slip op. at 6 (Bankr.N.D. Iowa June 24, 1996). More recently, the Eighth Circuit Bankruptcy Appellate Panel has expressed a

preference for the less mechanical "totality of the circumstances" test. *In re Cline*, 248 B.R. 347, 349 (8th Cir. BAP 2000); *In re Andresen*, 232 B.R. 127, 137 (8th Cir. BAP 1999) (citing *In re Andrews*, 661 F.2d 702, 704 (8th Cir.1981)).

■ The totality of the circumstances test announced in *Andrews* is similar to the *Brunner* test. *Andresen*, 232 B.R. at 140. According to the *Andresen* court, the differences between the tests are minor. *Id.* The court specifically notes that the *Andrews* test simply allows for a "broader consideration of the case and any factors specific to a given debtor's particular situation." *Id.* An analysis under the *Andrews* test requires the debtor to establish by a preponderance of the evidence:

> (1) the debtor's past, present, and reasonably reliable future financial resources;
>
> (2) calculation of the debtor's and his dependent's reasonable necessary living expenses; and
>
> (3) any other relevant facts and circumstances surrounding that particular bankruptcy case.

*Andresen*, 232 B.R. at 139.

■ When applying the factors, the Court examines Debtor's ability to obtain, retain, and continue employment and Debtor's expected earnings from such employment. *Andrews*, 661 F.2d at 704. Other factors, such as alimony or child support payments that contribute to the debtor's unearned income and wealth, are also considered. *In re Ogren*, No. 95–12116KC, slip op. at 7 (Bankr.N.D.Iowa Oct.10, 1996).

■ The second factor requires the Court to determine whether Debtor has proven that the expenses of Debtor are reasonable. *Andresen*, 232 B.R. at 140. There is no set formula for what constitutes a reasonable necessary living expense, but courts, in the past, have determined that excessive bills for such things as leisure or recreation will not be allowed. *In re Wardlow*, 167 B.R. 148, 152 (Bankr.

W.D.Mo.1993) (finding $180 per mo. for cable bill and misc. recreation unreasonable); *Ogren*, slip op. at 8 (concluding expenses for flying and horseback riding lessons unreasonable).

■ The final factor of the *Andrews* test is relatively open-ended and allows a number of factors to be considered when Debtor is attempting to prove that undue hardship exists. *Andresen*, 232 B.R. at 140. In *Andrews*, the court found the existence of circumstances such as serious illness could be considered when estimating the debtor's ability to pay down the debt on her student loan. *Andrews*, 661 F.2d at 705. Other factors, such as the size of the debt, whether the debtor made a good faith effort to repay the debt, lack of usable job skills, or the existence of a large number of dependents, may be relevant in certain circumstances. *In re Ammirati*, 187 B.R. 902, 907 (D.S.C.1995), *aff'd*, 85 F.3d 615, 1996 WL 241844 (4th Cir.1996).

■ Finally, the Court must evaluate the record as a whole to determine whether Debtor has carried the burden of proving that undue hardship exists. *Andresen*, 232 B.R. at 140. Present inability to repay the loan may not suffice as a hardship. *Roberson*, 999 F.2d at 1135. Instead, there must be a "certainty of hopelessness" that the loans will be repaid. *Id.* at 1136. "Undue hardship requires the debtor to show that the debtor is suffering from truly severe, even uniquely difficult circumstances, not merely severe financial difficulty." *Ogren*, slip op. at 6. Ultimately, the Court must make its judgment in light of the strong legislative policy against allowing the discharge of student loans in bankruptcy. *Id.*

■ Ordinarily, the Court would consider the foregoing factors and make a determination based upon the record. However, this record reveals facts which, in the opinion of the Court, establish a failure to exhaust administrative remedies,

which precludes this Court from making a decision on the merits at this time. Congress has provided the following:

(c) Discharge

(1) In general

If a borrower who received, on or after January 1, 1986, a loan made, insured, or guaranteed under this part and the student borrower, or the student on whose behalf a parent borrowed, is unable to complete the program in which such student is enrolled due to the closure of the institution or if such student's eligibility to borrow under this part [20 U.S.C.A. § 1071 et seq.] was falsely certified by the eligible institution, or *if the institution failed to make a refund of loan proceeds which the institution owed to such student's lender,* then the Secretary shall discharge the borrower's liability on the loan (including interest and collection fees) by repaying the amount owed on the loan and shall subsequently pursue any claim available to such borrower against the institution and its affiliates and principals or settle the loan obligation pursuant to the financial responsibility authority under subpart 3 of part G [20 U.S.C.A. § 1099c et seq.]. In the case of a discharge based upon a failure to refund, the amount of the discharge shall not exceed that portion of the loan which should have been refunded. The Secretary shall report to the Committee on Education and the Workforce of the House of Representatives and the Committee on Labor and Human Resources of the Senate annually as to the dollar amount of loan discharges attributable to failures to make refunds.

20 U.S.C. § 1087(c) (emphasis added).

Debtor testified to and answered certain interrogatories which, if established, could prove that the college which Debtor attended was to refund the whole amount of the student loan upon his withdrawal from classes. Their apparent failure to carry through on this promise appears to provide Debtor with a remedy under the provisions of the Higher Education Act.

It appears clear from case law and statutory construction that this statute does not provide for a private cause of action by a debtor in bankruptcy under Chapter 7 of 11 U.S.C. *In re Bega,* 180 B.R. 642, 643 (Bankr.D.Kan.1995). The Code of Federal Regulations sets forth the procedure that must be followed to seek relief under the foregoing provisions of the Higher Education Act. 34 C.F.R. § 685.215 (2000).

Ultimately, the Secretary of Education is initially responsible for determining whether the student loan described in the present case should be discharged. It is the conclusion of this Court that, as an administrative remedy, Debtor must first exhaust all rights provided to him under this statute prior to this Court determining whether hardship, as defined by the Bankruptcy Code in 11 U.S.C. § 523(a)(8), exists on the record presented. As such, this Court concludes that the relief sought in this adversary is denied at this time without prejudice against Debtor refiling, if, after exhausting his administrative remedies under 20 U.S.C. § 1087(c), he has not been provided relief.

**WHEREFORE,** this adversary complaint is denied without prejudice against refiling if the conditions set forth in this ruling are satisfied.