**In re Kenneth O. WYNN, Debtor.**

**Kenneth O. Wynn, Plaintiff,**

v.

**Missouri Coordinating Board of Education, and Washington University and Education Credit Management Corporation, Defendants.**

**Bankruptcy No. 99–10162.**
**Adversary Nos. 99–01028A, 99–01122A, 99–01026A.**

United States Bankruptcy Court, S.D. Georgia, Augusta Division.

Jan. 22, 2001.

---

Todd Boudreaux, Todd Boudreaux, P.C., Augusta, GA, for Debtor.

A. Stephenson Wallace, Augusta, GA, trustee.

## ORDER

JOHN S. DALIS, Chief Judge.

This matter comes before me on complaint to determine the dischargeability of student loan debts filed by Dr. Kenneth O. Wynn ("Debtor"). The debts in question concern student loans held by Missouri Coordinating Board of Education ("MCBE"), Education Credit Management Corporation ("ECMC"), and Washington University ("WU"), collectively "Defendants." Debtor claims the student loans are dischargeable under the undue hardship exception of 11 U.S.C. § 523(a)(8).[1] This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). After considering all the evidence presented and applicable authorities, I conclude that the debts owed to MCBE and ECMC as well as WU which are eligible for consolidation are nondischargeable. The portion of the WU debt that is not eligible for consolidation is discharged.

The facts are as follows. Debtor filed a Chapter 7 case on January 19, 1999. At the time of the petition and presently Debtor is employed by the United States Department of Defense, serving as a Captain in the United States Army and a practicing dentist. Debtor is 38 years-old and has a 29–year–old wife who is pursu-

---

1. 11 U.S.C. § 523 provides in pertinent part:
Exceptions to discharge
(a) A discharge under section 727, . . . of this title does not discharge an individual debtor from any debt—
. . .
(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any pro-
gram funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

ing a degree in business and is not working at this time. The couple was at the time of trial expecting a child.

Debtor incurred substantial student loan debt while obtaining his post graduate degree in dentistry. He owes MCBE approximately $8,823.06 for a Supplemental Student Loan, $22,364.08 to ECMC for a Federal Stafford Loan, and approximately $58,549.06 to WU for Perkins Loan, Health Professions Student Loan, and other loans.[2] According to Debtor's expert witness Mr. Matchefts[3], $20,864.00 owed for WU private loans do not meet the eligibility requirements for consolidation in the William D. Ford Federal Direct Loan Program set forth in 34 C.F.R. § 365. In addition to the above-listed student loans, Debtor owes $157,741.51 to the Department of Education for HEAL loans which are nondischargeable under 42 U.S.C. § 292f(g).[4] On March 24, 1999, Debtor filed adversary proceeding numbers 99–01028 and 00–01026 and on October 29, 1999 filed adversary proceeding number 99–01122. The cases were consolidated for a trial.

Debtor's Schedule I showed that Debtor had a monthly income of $3,945.65. Schedule J indicates monthly expenses of $5,376.44 ($2700.00 of which is for student loans) for a net income of -$1430.79.

Debtor seeks the discharge of his student loans and the parties have stipulated that the debts are of the kind governed by § 523(a)(8). These debts are nondischargeable unless their exception to discharge would constitute an undue hardship to the Debtor. 11 U.S.C. § 523(a)(8). Debtor asserts that having to pay approximately $247,479.00 in student loans will impose an undue hardship on him and his expectant wife.

■ To determine whether the undue hardship exception should apply, the par-

2. Debtor's total itemized student loan debt is as follows:

| Loan Holder | | Balance as of 6–30–00 |
| --- | --- | --- |
| **Coordinating Board** | | |
| Supplemental Loan for Students | | $ 8,823.06 (at 8.13%) |
| **Washington University** | | |
| Perkins Loan | $18,781.87(at 5%) | |
| HPSL | $ 9,858.25(at 5%) | |
| HPSL | $ 9,045.01(at 9%) | |
| WU Private Loan | $13,375.42(at 7%) | |
| WU Private Loan | $ 2,875.66(at 0%) | |
| WU Private Loan | $ 2,067.34(at 7%) | |
| WU Private Loan | $ 2,545.50(at 3%) | |
| Subtotal: | | $ 58,549.06 |
| **ECMC** | | |
| Stafford-subsidized Loan | $11,182.42(at 10%) | |
| Stafford-subsidized Loan | $11,182.41(at 10%) | |
| Subtotal: | | $ 22,364.83 |
| **U.S. Dept. of Health and Human Services** | | |
| HEAL Loans | | $157,741.51 |
| Total | | $247,478.46 |

3. Mr. Matchefts has served as general counsel to the Missouri coordinating Board for Higher Education and to the Missouri Student Loan Program since 1997.

4. The $157,741.51 in HEAL loans is eligible for consolidation and was utilized in the consolidation calculation. Matchefts Dep. Exh. D

ties agree that *Brunner v. New York State Higher Education Servs, Corp. (In re Brunner)*, 46 B.R. 752 (S.D.N.Y.1985), *aff'd* 831 F.2d 395 (2d Cir.1987), which was adopted in this district in *Kemp v. Georgia Higher Educ. Assistance Corp. (In re Kemp)*, No. 95–4032 (Bankr.S.D.Ga. November 28, 1995) (Davis, C.J.) controls. Under the *Brunner* test, a debtor must establish three elements to qualify for the undue hardship exception. First, the debtor must establish that he cannot, based on current income and expenses, maintain a "minimal" standard of living for himself and his dependents if forced to repay the loans; second, that this state of affairs is likely to persist for a significant portion of the repayment period of the student loan; and third, that the debtor has made good faith efforts to repay the loans. *Brunner*, 831 F.2d. at 396.

■ The first prong of the *Brunner* test is satisfied. The Debtor's Schedules I & J establishes that he cannot maintain a "minimal" standard of living if forced to repay the loans on their current terms. "The petition date is the watershed date of a bankruptcy proceeding. As of this date, creditors' rights are fixed (as much as possible), the bankruptcy estate is created, and the value of the debtor's exemptions is determined." *Johnson v. General Motors Acceptance Corp. (In re Johnson)*, 165 B.R. 524, 528 (S.D.Ga.1994); *See Rivers v. United Student Aid Funds, Inc. (In re Rivers)*, 213 B.R. 616, 619 (Bankr.S.D.Ga. 1997) (Walker, J.) (looking at debtor's schedule to determine first prong of *Brunner* test). As stated in *Canady v. Canady (In re Canady)*, Chapter 7 Case No. 95–11624, Adversary Proceeding No. 95–01117A, slip op. at 9 (Bankr.S.D.Ga. September 16, 1996) (Dalis, J.), "[s]chedules I & J reflect not only the debtor's financial condition on the date of the petition, but also contemplates the effect of debtor's impending discharge." However, utilizing Schedules I & J does not preclude evidence showing that the debtor artificially inflated expenses or deflated his income in order to receive the discharge. *Walford/Hillman v. Walford (In re Walford)*, Chapter 7 Case No. 97–10538, Adversary Proceeding No. 97–01026A, slip op. at 6 (Bankr.S.D.Ga. August 29, 1997) (Dalis, C.J.). Evidence of a tithe expense being left out was proffered. However, the tithe was not left off in a bad faith effort to deflate the Debtor's expenses which would not make sense as Debtor is attempting to show an inability to meet expenses. Therefore, the schedules are to be considered as an accurate reflection of Debtor's financial condition.

A review of Debtor's Schedule I shows that Debtor has a total net income of $3,945.65. Schedule J indicates Debtor has monthly expenses of $5,376.44 ($2700.00 of which is for student loans) for a net income of -$1430.79. His other expenses are reasonable expenditures for a household of two. Clearly, if Debtor is required to payoff the student loans at $2700 per month at the current loan terms, he is unable to maintain a minimal standard of living.

■ The third prong of the *Brunner* test that Debtor has made a good faith effort to repay the loans is also met. Good faith will be found if there is a lack of evidence of bad faith. *See Rivers v. United Student Aid Funds, Inc. (In re Rivers)*, 213 B.R. 616, 619 (Bankr.S.D.Ga.1997) (Walker, J.) (stating that debtor meets the third element because debtor has not shown any bad faith by an inability to pay the debt). Attempting to rebut Debtor's showing of good faith, Defendants have offered statistics of income of privately employed dentists as evidence of Debtor's possible earnings if he was not employed in the United States Army. Secondly, De-

fendants argued that Debtor lacked good faith by buying a car instead of leasing which would have reduced the payments. Thirdly, Defendants argued that Debtor acted in bad faith by not seeking consolidation of his loans.

██ None of the evidence shows Debtor's bad. faith. Debtor testified to attempts made to repay the loans to the extent he could. An inability to pay is not evidence of bad faith. Debtor testified that he sought and received some financial help from relatives to pay on the loans. He also has consulted financial advisers for help with his debt without success. Furthermore, Debtor remaining in the United States Army as a dentist and continuing to serve our country even though a private career could perhaps be more lucrative certainly is not evidence of bad faith. As to not seeking consolidation, Debtor testified that he was unaware of the income contingent repayment plan and loan consolidation program. I find his testimony credible. His lack of knowledge of these is not evidence of bad faith. Therefore, the third prong of the *Brunner* test has been satisfied.

██ Debtor fails to satisfy the second prong of the *Brunner* test as to the debts that can be consolidated. I must decide if Debtor will be unable to maintain a "minimal standard of living" for a significant portion of the loan repayment period. Debtor urges me to consider the measuring time to be six and a half years that Debtor has remaining out of the ten year loan. However, *Brunner* only states that the circumstances are "likely to persist for a significant portion of the repayment period of the student loans." 831 F.2d at 396. There is no language in *Brunner* that indicates a modified period cannot be considered if the debt is restructured or consolidated so that the monthly payments are reduced and the repayment period is lengthened. Once Debtor consolidates the loans under an income contingent plan then the repayment period is extended up to 25 years. I must decide if Debtor will be unable to maintain a minimal standard of living for the maximum 25 year term if required to pay back the loans.

Debtor must be eligible to consolidate his loans and the evidence indicates that he does qualify. Interpreting the Code of Federal Regulations, the expert witness, Mr. Matchefts, stated that in order for Debtor to consolidate his particular loans, he must meet the following requirements:

1) The borrower has (a) an outstanding balance on Direct loan, or (b) has an outstanding balance on a Federal Family Education Loan (FFEL) loan and asserts that he either (i) is unable to obtain a FFEL consolidation loan, or (ii) is unable to obtain a ·FFEL consolidation loan with income sensitive repayment terms acceptable to the borrower. and is eligible for the income contingent repayment plan under the Direct Loan Program;

2) that the loans being consolidated are in a repayment period but not in default, or if they are in default, agree to repay the consolidation loan under the income contingent repayment plan set forth in § 685.208(f) and sign the consent form set forth in § 685.209(d)(5);

3) certify that no other application to consolidate loans eligible for consolidation under the Direct Loan Program is pending with any other lender; and

4) agree to notify the Secretary of the Department of Education of any changes in his address.

*See* 34 C.F.R. § 685.208(irrelevant criteria omitted).

Defendants contend and Debtor does not deny that he can meet the eligibility requirements for a Direct Consolidation

Loan. Debtor has several outstanding FFEL loans which are his Perkins Loan, Health Profession Student Loans, Supplemental Loan for Students, and his Stafford Loans. Debtor must assert that he is unable to obtain a FFEL consolidation loan or unable to obtain one with income sensitive repayment terms that are acceptable to Debtor. Mr. Matchefts explained that the reasonableness of Debtor's decision is irrelevant and all he must do is certify that he attempted to obtain a FFEL consolidation loan but failed to find terms acceptable to him. Dep. p. 69. Mr. Matchefts also testified to the ease of obtaining a Direct Consolidation Loan and stated that in the cases in which he has been involved, no student has been turned down for consolidation for failing to qualify. Dep. p. 56. Debtor is virtually guaranteed to qualify for consolidation.

Because some of the federally guaranteed loans are in default, the second criteria can be met when Debtor agrees to repay the consolidated loans under the income contingent repayment plan. The income contingent repayment plan as set forth in 34 C.F.R. § 685.208(f) provides for payments based upon Debtor's adjusted gross income and family size.

The third criteria is also met as Debtor does not have any applications to consolidate loans eligible for consolidation under the Direct Loan Program pending with any other lender. Debtor testified that he was told by lenders that he did not qualify for consolidation. As to the fourth requirement there seems to be no obstacle to Debtor's certifying his address to the Secretary of the Department of Education.

Upon consolidation, Debtor will have a manageable payment plan. Based upon a calculation done by Mr. Matchefts on the Department of Education's web site which contains the direct loan consolidation calculator, Debtor's initial monthly payment under the income contingent repayment plan would be around $649/mo. over a 25–year period and any remaining indebtedness after the 25 year term would be cancelled. 34 C.F.R. § 209(c)(4)(iv). The calculation was based upon an income of $50,000/yr. and a family size of two. Schedule I indicates that Debtor has a disposable income of $3,945.65. Schedule J indicates Debtor has monthly expenses of $5,376.44 ($2700.00 of which is for student loans) for a disposable income of -$1430.79. If the $2700.00 is replaced with the monthly payment of $649.00, Debtor has a net income over expenses of $620.21 for his family.[5]

Furthermore, Debtor has a good, stable job in the U.S. Army as a captain and is currently going into a surgical residency that may increase his income. The prognosis for the future is good for Debtor. Therefore the loans that are eligible for consolidation are nondischargeable.

WU also has private loans that are not eligible for consolidation. The private loans that are ineligible for consolidation are discharged. Using the *Brunner* test, the Debtor would be unable to maintain a minimal standard of living for the remaining repayment period because the private loans are in default and if not discharged WU would be free to pursue state law remedies for collection including wage garnishment and asset attachment and levy. Debtor would not be able to make the income contingent repayment plan pay-

---

**5.** $5,376.44(Schedule J expenses) − $2,700.00(student loans) = $2,676.44

$2,676.44 + $649.00(new student loan payment) = $3,325.44(new expenses upon consolidation)

$3945.65(Schedule I income) − $3,325.44 = $620.21(disposable income)

ments due to WU's collection efforts. Furthermore, since there is no comparable set of guidelines or criteria as in the Direct Loan Consolidation Program that ensures a manageable repayment plan, the debts must be discharged. Therefore, as to the private WU loans that total $20,864.00 Debtor satisfies the second prong of the *Brunner* test.

Therefore it is ORDERED that the debt owed to Missouri Education Coordinating Board in the amount of $8,823.06, the debt owed to Education Credit Management Corporation in the amount of $22,364.08 and the debt owed to Washington University in the amount of $37,685.13 are ORDERED not discharged in the Debtor's underlying bankruptcy case.[6] It is further ORDERED that the debt owed to Washington University in the amount of $20,864.00 is discharged.

---

**6.** In the event the Debtor makes a good faith effort to consolidate his nondischargeable loans and is denied, relief from this order and the resulting final judgment is available to the Debtor under Federal Rule of Bankruptcy Procedure 9024.